350 So.2d 146 (1977)
STATE of Louisiana
v.
Nathan BALLANSAW.
No. 59282.
Supreme Court of Louisiana.
September 19, 1977.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, and Robert D. Long, Jr., Asst. Dist. Attys., for plaintiff-relator.
Arthur L. Harris, New Orleans, for defendant-respondent.
DIXON, Justice.
By bill of information the district attorney for Orleans Parish, in three separate counts, charged the defendant, Nathan Ballansaw, with procuring, receiving and concealing property which had been the subject of thefts, under circumstances which indicated that the defendant knew and had good reason to believe that the property was the subject of the thefts. The defendant moved to suppress evidence which had been seized in the execution of the warrant, arguing that the warrant was not based on probable cause. The trial judge granted the defendant's motion to suppress, and this court granted writs to review the ruling of the trial judge. State v. Ballansaw, 342 So.2d 869 (La.1977).
*147 The trial judge ruled that the application for the warrant[1] did not establish the reliability of the police informant.
Therefore, the sole issue for determination is the adequacy of the affidavit in support of the search warrant. The affidavit *148 reveals the following: on November 5, 1976 at 5:30 p. m. the two affiants (police officers) were contacted by a "confidential informant." The informant had cooperated with these officials in the past and had previously supplied information useful in securing search warrants which had led to arrests and convictions of narcotics offenders. The informant had also given the officers information useful in recovering stolen property taken in burglaries in the officers' district. The informant told the police that on the preceding day, November 4, 1976, he had been in the residence of the defendant, Nathan Ballansaw, located at 4613 Chestnut Street in New Orleans. The informant told the officers that while in the apartment he saw the property that was listed on the first page of the application for search warrant, including a horsehoe ring, a color television, a wristwatch, a cameo ring and some drugs. He said that the defendant had bragged to him that the property was stolen in burglaries from residences and he remembered where the property had been stolen. The officers learned the exact location of the burglaries from police bulletins in their files. The informant told the police where marijuana and heroin were located (although the charges here are for receiving stolen things) in the house. The informant told the officers that while he was in the house he saw the defendant give his girl friend some jewelry that had been taken in various burglaries. The informant also told the officers of the exact location in the house of the television, the watch, the cameo ring and the horseshoe ring. From the descriptions of the burglaries that the defendant gave to the informant (and which the informant related to the officers) and from a description of the property seen in the defendant's house by the informant, the officers were able to match up the stolen property with reports of burglaries in their district and precisely determine whose property the defendant possessed. Further, the affiants declared that they drove past the defendant's house and the physical appearance of the house matched with the informant's description. In addition, the informant positively identified a police photograph of the defendant as the man whose house he had been in and he further verified his identification by describing the defendant's various tatoos.
When information obtained from a "confidential informant" is an essential element in establishing the sufficiency of an affidavit, the magistrate must be informed of underlying circumstances establishing both the reliability of the information and the credibility of the informant. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); State v. Brawley, 347 So.2d 238 (La.1977). In testing the sufficiency of the affidavit, the court must decide the issue without regard to the success of the after-the-fact search. Here, the confidential informant's reliability has been adequately demonstrated. He had given information to the officers in the past, not only on narcotic cases but also on burglaries in the area, and this information helped lead to arrests and convictions. As to the reliability of the information, the informant told the affiants that he had been in the defendant's apartment the previous day and had personally observed all of the stolen property. He gave detailed descriptions of exactly where all the property was located. In addition, the information about the defendant's residence was corroborated by the police officers, and his identification of the defendant was corroborated by the police officers. The only question remaining was whether there was sufficient information before the magistrate for him to find probable cause that the items in the defendant's house were in fact stolen. According to the informant, he was told by the defendant that these items were stolen in burglaries in the district. The defendant's "bragging" that these were stolen items constitutes an admission against penal interest by the defendant. Such an admission lends credibility to the statement made by the defendant and relied upon by the informant and the affiants. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); State v. Turner, 337 So.2d 1090 (La.1976). *149 See also State v. Brawley, supra. In addition, the police officers stated that from the descriptions of the burglaries relayed to them by the informant and the descriptions he gave of the property, the police officers were able to match up the victims, property and police item numbers on these unsolved burglaries. Taken together, all of this information did establish the requisite reliability for the information given the officers, and there was probable cause for the issuance of the search warrant. The State's argument has merit and the motion to suppress should not have been granted.
The ruling of the district judge on the motion is suppress is reversed and the case is remanded to the district court for further proceedings.
NOTES
[1] The affidavit in support of the search warrant provides:

"On Friday, November 5, 1976, at approximately 5:30 PM, Officers Ross Hocklin and Wayne Tamborella assigned to Unit # 227 of the Second Police District were met at the Second District Station, 4317 Magazine St., by a competent confidential informant who has cooperated with these officers in the past on several occasions and who has supplied information useful in securing search warrants which have led to the arrest and conviction of narcotic offenders. This subject has also given the officers useful information toward the recovery of stolen property in several other cases where the property was taken in the second district area in burglaries.
"The subject stated to the officers that a subject known to him has in his residence at this time, the person known to the CI is Nathan Ballensaw NM, DOB/081951 residing 4613 Chestnut St., N.O., Louisiana. The CI stated to the officers that he had been inside the subjects residence as recently as November 4, 1976, and that he had seen the above listed property inside the residence [the property listed on the first page of the application for search warrant included: One (1) white metal horseshoe ring with eight (8) clear stones; One (1) G.E. seventeen (17) inch color T.V.; One (1) lady's twenty-three diamond Hamilton wristwatch white gold in color; One (1) cameo ring, white metal in color of band and setting] he further stated that the subject had bragged to him that the property was stolen in burglaries and that he even could remember where the property was taken from. He toled (sic) the CI the property was taken from residences in the second district area and the officers learned the locations of the burglaries from the bulletins in the second district files from the locations supplies (sic) from the CI. The Items and the locations together with the victims are listed below:

Item Location Victim
J-13835-76 1301 Napoleon Ave. Melba H. Clesi Residing that address
J-16683-76 5124 Chestnut St. Lewis A. Pailet Residing that address
J-22217-76 818 Upperline St. Faye Bush Residing that address
J-23623-76 926 Jena St. Sheldon Heirsch Residing that address

"The CI further stated to the officers that the subject is in possession of approximately one (1) pound of marijuana and that the marijuana is usually kept on a small table in the living room of his residence, in a glass dish. He further stated that Ballensaw is a heroin addict and that he usually keeps his heroin inside the third drawer down on the right hand side of the sink in the kitchen of his residence. The CI went on to say that while he was inside the residence on the last occasion that he was present at the time that Ballensaw gave his girlfriend Cory Anderson NF 23 yrs of age some of the jewelry taken in the burglary under Item # J-22217-76, and some other jewelry from other burglarys (sic) in the recent past; these burglaries are still under investigation and will be acted on in the near future. The CI accompanied Officers to the location of the residence where Ballensaw resides and they learned that he was correct in the description of the residence and he Identified Ballensaw's NOPD BofI Photo # 134-239 as being the subject that had told him of the burglaries and identified the property as being stolen to him; he further varified (sic) his identification of Ballensaw from the Tatoos on his left arm of `DF' and `W' and on his right arm of `T' and of the name `Nathan' tatooed on his chest. [He stated to the officers that he did not know if Cory Anderson had been arrested, and that he could show the officer where she lived at this time. He directed the officers to the 800 block of Gentaylor St., and pointed out a large white house with no municipal numbers on the house and there were several entrances to the house and the officers could nto (sic) determine if the residence was an apartment complex or not, and the officers left the area.]
"The CI stated to the officers that the Color T.V. was in the rear of the bedroom and was resting on the chest of drawers; the lady's (sic) watch with the diamonds was sitting on the mantle piece in the room just before the bedroom, the Cameo ring was in the second drawer of the chest of drawers that the T.V. is sitting on in the bedroom; the man's horseshoe ring was being worn by the subject, Ballensaw, at the time of his visit and he was shown other jewelry in the chest of drawers, and other T.V.'s in the residence and was told that they were stolen, but that they were not in working order and that he could get the CI a pistol if he wanted one. He told the CI that he had a pistol in the residence, but did not relate to him whether it was stolen or not and he did not produce it to the CI; the CI had attempted to contact the officers in the early morning hours of 11-05-76, but was unable to contact them until about 5:30 PM on that date. From the CI's description of the property and of the subjects relating the incidents of the burglaries, the officers were able to locate the correct locations and items and victims and the entire list of stolen properties."