364 So.2d 964 (1978)
STATE of Louisiana
v.
Henry K. WEINBERG, Jr.
No. 62434.
Supreme Court of Louisiana.
November 13, 1978.
*965 William L. Crull, III, Dymond, Crull & Castaing, New Orleans, for defendant-respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Richard J. Petre, Jr., Asst. Dist. Atty., New Orleans, for plaintiff-relator.
DIXON, Justice.
Defendant Henry K. Weinberg, Jr. was charged by two bills of information with four counts of possession of a controlled dangerous substance (methaqualone, amphetamines, phentermine and pethidine) in *966 violation of R.S. 40:967, and with two counts of possession with the intent to distribute a controlled dangerous substance (oxycodone) in violation of R.S. 40:967, and possession of a firearm after conviction of a felony in violation of R.S. 14:95.1. These cases (Nos. 263,148 and 263,151) were allotted to the same section for trial, and defendant filed motions to suppress the evidence and inculpatory statements. The trial court sustained defendant's motions without assigning reasons. On application of the state, this court granted supervisory writs to review the ruling.
The state adduced the following facts. On January 4, 1978 a confidential informer contacted Agent William Renton, a narcotics officer in the Jefferson Parish sheriff's office. The informant told Renton that within the last few days he had been to a New Orleans residence at 926 General Pershing Street to meet Randolph Welch and defendant Henry Weinberg. At the residence the informant heard both Welch and Weinberg brag that they had committed several armed robberies in Orleans and Jefferson Parishes; Welch said that he was the "stickup" man and Weinberg said that he was the "wheelman." Also, the informer told Agent Renton he was shown a large quantity of percodan, demerol, dexidrene and other controlled dangerous substances and a chrome plated revolver that Welch claimed he had used to commit the robberies. Agent Renton told Sergeant Joseph Branham of the Narcotics Division of the New Orleans Police Department of the communication and vouched for the informant's reliability. Sergeant Branham knew several armed robberies had been committed in Orleans and Jefferson Parishes during November and December of 1977. In nearly every case one man, armed with a nickle plated revolver, entered the establishment, frequently drugs were taken, and a car was usually seen speeding away.
Shortly after the communication, Sergeant Branham, New Orleans Detective Haab and Jefferson Parish Agents Drumm and Soto, watched Welch and Weinberg leaving the residence at 926 General Pershing Street. The officers arrested Welch and informed Weinberg that he was a suspect under investigation for armed robbery and possession of narcotics. Weinberg accompanied the officers to police headquarters where he was interrogated. Detective Haab testified that Weinberg was not "under arrest" at that time, but if Weinberg had attempted to leave, Haab would have probably placed Weinberg under arrest for armed robbery.
Weinberg was advised several times of his constitutional rights and told the officers he understood these constitutional safeguards. When told that a search warrant would be obtained to search the premises at 926 General Pershing Street, Weinberg expressed concern for his father, who had a bad heart. The defendant told the officers that if they did nothing to affect his father's heart condition, he would show them where the narcotics were in the house. Prior to this statement Weinberg had not made any inculpatory statements. Subsequently, with a search warrant signed by Commissioner Nils Douglas, and with Weinberg assisting, the officers conducted a search of the residence at 926 General Pershing Street. Weinberg told the officers where to find his drugs and identified the drugs found as his drugs. The officers seized percodan, dexidrene, quaalude, dexamyl, demerol and ionamin, along with a chrome plated revolver.
By one assignment of error the state argues that the trial court erred in granting the two motions to suppress the evidence and inculpatory statements. At the hearing on the motions, the trial court treated the two motions separately; therefore, this court will address the issues separately.
Defendant contends that the application for a search warrant did not state probable cause for the search at 926 General Pershing Street. Defense argues that Weinberg's and Welch's declaration against penal interest which was related by the informant to the police did not establish the reliability of that information, and that the information was uncorroborated hearsay. Defense further contends that the affidavit *967 only stated that informant's information has led to arrests in the past and not to convictions. Defense finally argues that the application for a search warrant stated that within the last "few days" the informant was at the residence, and thus the affidavit did not establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932). Consequently, the defendant contends that the affidavit did not satisfy the requirements of reliability of the informant and the information as required by State v. Paciera, 290 So.2d 681, 685-686 (La.1974).
From the United States Supreme Court cases relating to the probable cause necessary for issuance of a search warrant, the court in State v. Paciera, supra, stated:
". . . The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an un identified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the creditability of the information reported include (a) direct personal observation by the informant, or (b), if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information. See State v. Linkletter, 286 So.2d 321 (La.S. Ct.1973)."
Magistrates and courts must test and interpret affidavits in a common sense and realistic fashion. A grudging or negative attitude by reviewing courts will tend to discourage police officers from submitting their evidence to a judicial officer before acting. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Magistrates should not be confined to niggardly limitations or by restrictions on their common sense. Their determinations of probable cause should be paid great deference by reviewing courts, and the resolution of doubtful or marginal cases should be largely determined by the preference accorded to warrants. State v. Anderson, 357 So.2d 547 (La.1978), and cases cited therein.
The affidavit in the present case[1] established the informant's credibility. The affiants *968 attested that the confidential informant supplied information in the past which led to arrests; such recitations support an informant's reliability. In State v. Roach, 322 So.2d 222 (La.1975), the affidavit recited that the information supplied by the informant had resulted in sixteen arrests during the previous five months.[2] This court found that this factor supported the informant's credibility and there was no requirement that the arrests must have resulted in convictions.
Likewise, the affidavit sufficiently demonstrates that the information is reliable. The informant personally observed the chrome plated revolver and a large quantity of controlled dangerous substances in the possession of Weinberg and Welch. An informant's direct personal observation is a factor indicating the credibility of the information. State v. Anderson, supra. Further, the informant stated that both Weinberg and Welch bragged that they had obtained the drugs from a series of armed robberies of drug stores. Weinberg's "bragging" that these drugs were obtained by armed robbery constitutes an admission against penal interest. Such an admission lends credibility to the statement made by the defendant and relied upon by the informant and the affiants. State v. Ballansaw, 350 So.2d 146 (La.1977). See also, State v. Anderson, supra; State v. Gilbert, 354 So.2d 508 (La.1978); State v. Turner, 337 So.2d 1090 (La.1976). In addition, the affidavit states that one of the affiants corroborated the informant's information by having the victim of an armed robbery view a set of six photographs and the victim identified the photograph of Welch as the man who robbed him with a nickle plated revolver and took controlled dangerous substances. The affidavit states that the affiants believed that the drugs and weapon were being kept at 926 General Pershing Street. This information, together with all the previous information, establishes the requisite reliability for the information given the officers.
The affidavit in the instant case stated that "within the last few days" the informant had observed the drugs and gun at 926 General Pershing Street. This time lapse of a few days before applying for the search warrant is still sufficient to establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. There was reasonable cause to believe the property would still be on the premises a few days after observation. The affidavit recites that the armed robbery in which Welch was later identified as the robber occurred on December 20, 1977, and the large quantity of drugs was still in Weinberg's possession a few days before January 4, 1978. See State v. Gilbert, supra, where the time lapse before applying for the search warrant was one to two weeks after observation of stolen property.
The affidavit is sufficient to establish the reliability of both the informant and the information, and there was probable cause for the issuance of the search warrant. Hence, the trial court erred in granting defendant's motion to suppress the evidence obtained from the search of 926 General Pershing Street pursuant to the search warrant.
In brief on the motion to suppress the inculpatory statements, the defense argues that the police lacked probable cause to arrest Weinberg, and that the interrogation of Weinberg was the product of the exploitation of his illegal arrest. Defense further argues that Weinberg's inculpatory statements made after he was in physical custody were coerced. The state in brief contends that Weinberg was not initially arrested[3] *969 as was Welch, but Weinberg willingly accompanied police to headquarters when told that he was a suspect under investigation for armed robbery and possession of narcotics.
In State v. Robinson, 342 So.2d 183 (La.1977), this court reasoned that it is the facts and circumstances indicating an intent to affect an extended restraint on the liberty of the accused, rather than the precise timing of an officer's statement, "you are under arrest," that are determinative of when an arrest is made. During the hearing on the motion to suppress the inculpatory statements, the officer who was interrogating Weinberg testified that although Weinberg was not under arrest at the time, he was not free to leave the station, and if he had attempted to leave the officer would have placed him under arrest for armed robbery. There was also some suggestion that Weinberg was handcuffed. In the instant case, an arrest was effected when the police took Weinberg to the police station originally; there was an extended restraint on his liberty.
C.Cr.P. 213 provides in part that a peace officer may without a warrant arrest a person when the officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer. Reasonable cause which this court has treated under C.Cr.P. 213 as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Drew, 360 So.2d 500, 510 (La.1978) and cases cited therein. The law does not require that "reasonable cause to believe" be established by evidence sufficient to convict; the arresting officer need not be convinced beyond a reasonable doubt of the arrested person's guilt. The standard of reasonable cause to believe is a lesser degree of proof determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer from which he might draw conclusions warranted by his training and experience. State v. Boyd, 349 So.2d 1256 (La.1977).
In the instant case the officers had probable cause or reasonable cause to arrest Weinberg: (1) there had been armed robberies of drug stores in Orleans and Jefferson Parishes during late 1977; (2) a nickle plated revolver had been used and drugs were taken in addition to money; (3) two men were usually involved, one as the "stickup" man, the second as the "wheelman; " (4) a confidential informant whose reliability had been confirmed before the arrest had seen a large quantity of controlled dangerous drugs and a chrome plated gun in the possession of Welch and Weinberg at 926 General Pershing Street within the last few days; and (5) Weinberg and Welch had bragged to the informant that they had obtained the drugs in a series of armed robberies of drug stores in both Orleans and Jefferson Parishes and Weinberg bragged that he was the driver.[4]
Defense further argues that Weinberg made inculpatory statements and agreed to cooperate with police at the station to avoid causing his father to have a *970 heart attack when the police showed up with a warrant to search his father's house; therefore, Weinberg's will was overborne. Before a confession or inculpatory statement may be introduced into evidence, the state must prove affirmatively, and beyond a reasonable doubt, that the statement was freely and voluntarily made. C.Cr.P. 703(C); R.S. 15:451; State v. McGraw and Manchester, ___ So.2d ___ (La.1978), and cases cited therein. Furthermore, when the inculpatory statement is obtained during custodial interrogation, as in the instant case, the state must show that the accused was advised of his constitutional rights under Miranda. State v. Hutto, 349 So.2d 318 (La.1977).
In the present case the defense readily admits that Weinberg was advised of his Miranda rights several times, but the issue is whether Weinberg's inculpatory statements were freely and voluntarily made. According to the state, Weinberg's inculpatory statements were made in the following situation:
BY MR. PETRE, FOR THE STATE:
"Was he threatened in any way, by you or any other police officer in the office?
A I did not threaten him at all.
Q Any promises made to him in the office or before then?
A Well, if you want to call it a promise, was when he made a certain statement to us, and we made an agreement that nothing was done to his father.

Q Can you go into that, Officer?
A You want me to tell everything?
THE COURT:
Just go into that part.
THE STATE:
In relation with his father, nothing would be done to his father.
A All right. We advised him of his rights the second time in the office. We told him that the other subject had made statements to us in regard to things that were in the house and for the house. He said, `Well, before you do that, I have drugs in there. My father has a bad heart, I don't want you to go in there and upset him, or arrest him'. I said, `If you show us where the drugs are nothing will be done to your father.' That was it." (Emphasis added).
Later on cross-examination, Sergeant Branham further testified:
BY MR. CRULL FOR THE DEFENSE:
Q Well, he didn't tell you anything until after you had the discussion about his father's condition, is that correct?

A No. It was rather spontaneous. We told him that Welch had made statements to us, that we were going to apply for a search warrant for the residence, at that time, he said, `Well, before you do that, my father has a heart condition. I have drugs in there, I will turn them over to you, if you promise not to arrest my father or cause his heart condition to get worse.'" (Emphasis added).
The record does not indicate that the officers knew of the heart condition of defendant's father nor does the record indicate that the officers intentionally applied for a search warrant to induce Weinberg to cooperate. The officers had probable cause to arrest Weinberg and to secure a search warrant without Weinberg's consent or cooperation. The officers only promised not to upset defendant's father after[5] defendant made his inculpatory statement and offered to cooperate in the search. Weinberg's inculpatory statement was freely and voluntarily made as a spontaneous response to the fact that the officers were applying for a search warrant and would search his father's house. The trial court erred in *971 sustaining the motion to suppress this inculpatory statement of Weinberg that he had drugs in the house.
During the subsequent search of the premises, Weinberg delivered some drugs to the officers, stating, "this is mine," to distinguish Weinberg's drugs from Welch's drugs, which were never found. The defense also seeks to suppress this latter admission which was made after Weinberg had offered to show the officers where the drugs were and the officers had agreed that nothing would be done to Weinberg's father. Weinberg's inculpatory statement is not inadmissible merely because in making it he was motivated by his desire to protect his father. The proposal for consideration of his father was not suggested by the police to induce Weinberg to show them where the drugs were; the proposition originated with Weinberg.[6] Considering the facts of this case, this admission was not so coerced as to render the statement involuntary and therefore inadmissible. See, People v. Matlock, 51 Cal.2d 682, 336 P.2d 505 (1959).[7]
For the assigned reasons, the rulings of the district court on the motion to suppress the evidence and the motion to suppress the inculpatory statements are vacated and reversed. The case is remanded to the district court for further proceedings not inconsistent with this opinion.
DENNIS, J., concurs, being of the opinion that without the victim's information there would have been no probable cause.
SUMMERS, J., dissents.
NOTES
[1] "THE FACTS AND REASONS FOR THE REQUEST OF THIS SEARCH WARRANT ARE:

1. On Wednesday, January 4, 1978 Agent William Renton of the Jefferson Parish Sheriff's Office had occasion to speak with a reliable confidential informant, whose information in the past has led to arrests and whose information has been proven reliable through independent investigations conducted by Agent Renton, who stated that within the last few days that he (the informant) had been to a residence located at 926 Gen. Pershing St. located in the Parish of Orleans. He stated that at this address he met two subjects who he knew to be Randy Welch and Kenny Weinberger. While at the residence the informant saw a large quantity of percodans, demerol, dexidrene, and other controlled dangerous substances in the possession of the above two subjects. The informant further stated that both subjects bragged that they had obtained the drugs from a series of armed robberies of drug stores in both Orleans and Jefferson Parishes. The informant, was further shown a chrome plated revolver that Welch stated that he used in armed robberies.
2. On January 4, 1978 at (sic) Agent Renton relayed the above information to Sgt. Joseph Branham of the NOPD Narcotics Unit. Sgt. Branham then checked the NCIC MOTION system and learned that Welch was wanted in Orleans Parish for multiple theft charges. At 5:00 PM Agent Renton went to the Metairie Pharmacy located 246 Metairie Rd. and spoke with Dennis St. Pierre, the druggist. Mr. St. Pierre stated that he had been the victim of an armed robbery on December 20, 1977 and after viewing a set of 6 photographs identified a photograph of Randolph Welch as being the subject who held him up on December 20, 1977. Controlled Dangerous Substances were taken in this robbery and a nickle plated revolver was used.
3. On Wednesday, January 4, 1978 Sgt. Joseph Branham and Officer Andrew Haab of NOPD with Agent Allen Drumm of the Jefferson Parish Sheriff's Office observed both Kenny Weinberg and Randolph Welch leave 926 Gen. Pershing St. and at about 5:15 PM the Officers arrested Welch for the wanted notices in the NCIC system in addition to the armed robbery of December 20, 1977 at the Metairie Pharmacy. Due to the above it is the belief of the affiants that the above drugs and weapon are being kept at 926 Gen. Pershing St."
[2] On cross-examination Agent Renton testified that the informant had given information in the past that had led to "several arrests" and "it would be somewheres (sic) between four (4) and ten (10) (arrests) . . . just as a wild guess."
[3] In brief the state explains why Weinberg was not initially arrested by referring testimony at the hearing of Sgt. Branham who testified that he lacked sufficient proof for a criminal conviction.
[4] Originally at the first hearing on the motions, Sgt. Branham could not remember why Weinberg was suspected in the armed robberies and on cross-examination testified:

"BY MR. CRULL:
Q Why was Weinberg a suspect in the armed robberies?
BY SGT. BRANHAM:
A Because the (I don't remember exactly what the information was. I don't know if it had to do with the car that they were using, the car we stopped them in or it was information received)." (Emphasis added).
Later, at the second hearing on the same motions, Sgt. Branham testified on cross-examination that he had refreshed his memory with the warrant and that the police believed that Weinberg was the driver in the armed robberies.
[5] In brief defense relies on Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) (where the accused confessed only after the police told him that they would bring his wife in for questioning) and Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (where the accused confessed only after the police told her that her state financial aid for her infant children would be cut off and the children taken from her if she did not cooperate). In both these cases the accused confessed after the police threatened them. In the present case, Weinberg volunteered his inculpatory facts before the police promised not to upset his father.
[6] In general see, "Police statements that if suspect confesses his relatives will be released from custody or not be arrested, as rendering confession involuntary." 80 A.L.R.2d 1428 (1961).
[7] In People v. Matlock, the court found the admission voluntary and admissible under the facts of the case. There the defendant, while in custody accused of murder and robbery, disclosed to officers where stolen jewelry was hidden after he was told by an officer that if he would not tell where the jewelry was the officer would probably have to bring the rest of the family in until the matter was resolved.