290 So.2d 681 (1974)
STATE of Louisiana, Appellee,
v.
Paul A. PACIERA, Appellant.
No. 54032.
Supreme Court of Louisiana.
February 18, 1974.
*682 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Robert Pitre, Asst. Dist. Atty., Abbott J. Reeves, Special Asst. Dist. Atty., for plaintiff-appellee.
Edward C. Keeton, Lawrence J. Genin, Chauppette, Genin, Mendoza & Keeton, Marrero, for defendant-appellant.
TATE, Justice.
The defendant Paciera was convicted of receiving stolen things with knowledge they had been stolen, La.R.S. 14:69 (1950),[1] i. e., of being a "fence" for stolen things. He received a sentence of one year in the parish prison, suspended, and was fined one thousand dollars. On his appeal, he relies upon twelve bills of exceptions.

Motion to Suppress
The most serious issue of the appeal is presented by the bills (Nos. 1 and 2) taken to the denial of a motion to suppress certain *683 evidence as illegally and unconstitutionally seized. The items were seized pursuant to a search warrant issued on the basis of an affidavit. The defendant contends that this affidavit does not provide a sufficient factual basis, as required, to justify issuance of a search warrant.
Preliminarily, we should note that a Louisiana judge may issue a warrant authorizing the search for and seizure of specified things, including property which has been the subject of a theft. La.C.Cr.P. art. 161. Such search warrant "may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant." La.C.Cr.P. art. 162 (Italics ours.)
Under our jurisprudence, a search warrant may not be issued upon an affidavit reciting nothing more than the affiant has reasonable cause to suspect that the object of the search is in the premises. State v. Wells, 253 La. 925, 221 So.2d 50 (1969). The affidavit must recite facts establishing to the satisfaction of the judge, not the affiant, that probable cause exists for issuance of the search warrant. State v. Holmes, 254 La. 501, 225 So.2d 1 (1969); State v. Wells, cited above. If a search warrant is illegally issued by virtue of an insufficient affidavit, the evidence thereby illegally seized is inadmissible in a criminal prosecution. State v. Holmes and State v. Wells, cited above; see Professor Dale Bennett, 30 La.L.Rev. 309-10 (1969).
In the instant case, the defendant was charged with receiving a lawn-hedge mower and a box of tools stolen from the residence of Mrs. Georgia Woodson on February 7, 1971, along with other things. The hedger and tool box were recovered two days later in a search of the defendant Paciera's home, pursuant to a search warrant here questioned as illegal on the ground that the affidavit upon which it was based was insufficient.
The affidavit was executed by Detective Taffaro of the Jefferson Parish Sheriff's office. As shown more fully by its text as set forth in the margin,[2] after describing the premises for which the search warrant was requested, the facts set forth by the affiant are two-fold in nature:
1. Information obtained by him from Policemen Thomas and Marshall, experienced officers of the New Orleans Police Department, as follows: The Woodson residence in New Orleans had been burglarized. Thomas and Marshall had recovered *684 all of the stolen property except a lawn-hedger and miscellaneous papers. They had secured the information by which they had recovered such other property from a confidential informant, who had previously helped them solve about 15 residence burglaries. These policemen had also learned, on following up the informant's information which led to the recovery of some of the stolen property, that the stolen hedger and papers were at the defendant Paciera's premises. They had also been informed by the informant that Paciera was a fence man for stolen property. (The italicized sentences represent information obtained by the affiant by hearsay report rather than by direct personal observation or report.)
2. The affiant's own personal acts and observations in response to such information: These were a seven-hour surveillance of the Paciera premises, during which one known burglar, identified by name, was seen going to the residence, as well as several other unidentified persons.
By itself, what the affiant personally observedthat he had seen a burglar visiting the Paciera residence, 2 abovedoes not constitute probable cause to justify a search of the Paciera residence; nor does the state contend otherwise. The real issue is whether the information received by the affiant firsthand from reliable informants (i. e., the New Orleans police officers), along with this firsthand observation, can be considered sufficient probable cause for issuance of a search warrant.
The information furnished by the police officer informants to the affiant detective is of two natures: (a) that gleaned from their own personal observation and participation, being principally recovery of other property stolen in the Woodson burglary; and (b) that learned from a confidential informant, whom they (not the affiant, who never spoke to him) knew to be reliable for reasons shown with sufficient specificity, being information which led to recovery of part of the stolen property and further information gained in the same way that the remainder (the stolen hedger and papers) had been sold to Paciera, and information that the informant also told them that Paciera was a known fence. See the italicized sentences in paragraph 1 above, describing the contents of the affidavit.
The defendant attacks the facts thus shown by the affiant, particularly those denoted as (b), as being double- or triple-hearsay, so far as the magistrate was concerned, and as being in the nature of "a casual rumor circulating in the underworld or an accusation based merely on an individual's reputation", Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). This sort of information is denoted by that decision as insufficient (in the absence of a description of "the accused's criminal activity in sufficient detail") to support a search warrant.
The complaint is not frivolous. Pretermitting for the moment the issue of double- or triple-hearsay, the contention might be well-founded if the New Orleans policemen themselves had only furnished information to the issuing magistrate that they had recovered some of the stolen property, by use of the proven informant, and that this informant had, with regard to Paciera, informed them only of his underworld reputation as a fence. Such latter information by itself does not give rise to probable cause to believe that the particular goods stolen are located at this particular defendant's residence, for no sufficient factual basis is shown by which it is more than rumor or naked accusation.
However, here, the information given to the police officers by the informant acquires credence of probable cause as to this particular suspect and as to these particular premises: The same informant had given information to them which led to their recovery of other property stolen in the same burglary and to information that the hedger stolen in this same burglary had been sold to Paciera and was on the *685 Paciera premises. The information was thus indicated to be reliable as to this burglary.
The probable cause for a search furnished to these police officers is thus based on more than a casual rumor and on more than general reputation. It is rather based upon circumstances which indicate a factual basis reasonably to believe that the stolen hedger was on the Paciera premises, sufficient at least to justify a search if a warrant was secured.
But, the defendant further objects, these policemen themselves did not furnish the information to the magistrate who issued the search warrant. Rather, the affiant recited to the magistrate what the police officers had told the affiant (hearsay) that the informant had told them (double hearsay) and what the policemen had learned by further unidentified means or from further unidentified sources.
The issue may be close, but we prefer rather to characterize the facts recited by the affiant as follows: The affiant had learned from reliable policemen-informants that the particular stolen property was on the Paciera premises, with the reliability of the information thus obtained being evidenced by the specific facts set forth showing that these policemen had personally recovered some of the property stolen in the same burglary by the identical means that they had learned that the particular stolen property was on the Paciera premises. Further, some very slight corroboration to this information (and the related information that Paciera was a known fence) was furnished when the affiant personally observed a known burglar visiting the Paciera premises.
In holding the affidavit sufficient, we are influenced to some extent by the circumstance that the affiant specifically named the reliable informants (the policemen) who furnished him the hearsay information as to the location of the stolen property, in addition to furnishing the specific detail indicating the probable reliability of such information as given to them by the confidential informant.
In the first place, assuming that the depiction of the issuing magistrate carefully scrutinizing the affidavit before he signs the search warrant is more than an appellate fiction,[3] the specificity of the data naming the source of the information is some assurance of its reliability and permits the magistrate a means of easy informal verification if in doubt. In the second place, some protection against deliberate governmental inaccuracy is thus assured, since the truthfulness as to the source ascribed (if in doubt) may easily be verified at a hearing on a motion to suppress. State v. Melson, 284 So.2d 873 (La.Sup. Ct.1973); see also Note, 33 La.L.Rev. 339 (1973).
We believe, on the basis of all the reasons outlined above, that the affidavit used to secure the present search warrant does not offend federal Fourth Amendment standards as outlined by the United States Supreme Court. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960). See also: The Supreme Court, 1970 Term, 85 Harv.L.Rev. 53-64 (1971); Annotation, Search Warrant Hearsay, 10 ALR3d 359 (1966).
If we can deduce a rule from these cases, it is this: The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information *686 given by him. Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the creditability of the information reported include (a) direct personal observation by the informant, or (b), if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information. See State v. Linkletter, 286 So.2d 321 (La. Sup.Ct.1973).
The present affidavit provides a factual basis in sufficient detail by which a magistrate might have good reason to determine reliable both (1) the identified experienced police officer informants, who had recovered part of the property stolen in the same burglary, and (2) the information received from them that the rest of the stolen property was at the Paciera residence. The reliability of the latter information, received by the informants by following up information from an unidentified person, might be determined by the magistrate on the basis that (a) this person had given the police officers at the same time information which had led them to recover part of the property stolen in the same burglary, as partially corroborated by (b) the proven past accuracy (insofar as the officer informants were concerned) of this unidentified person.
Nevertheless, the defendant points out the absence of a showing in the affidavit as to how the police officers had learned, from following up the informant's information, that the lawn-hedger was at Paciera's residence. The defendant cites Spinelli as authority for his contention that, even though partially corroborated by other information obtained elsewhere, the basis of an informant's conclusory knowledge must be shown, so as to enable the detached magistrate to make an independent evaluation of whether the underlying circumstances warranted the conclusion reached by the informant.
Spinelli offers some support to the defendant's position. However, it concerned an instance where the naked conclusion of an unidentified informer, as well as impermissible general reputation, served as the only basis in the affidavit for a conclusion of unlawful activity (although, once having accepted the conclusion, otherwise innocently explainable information corroborated the conclusion).
To the contrary, the present affiant's identified informants (the New Orleans policemen) testified from their personal knowledge that they had recovered some of the property stolen in the Woodson burglary through information given them by an informant of shown-proven reliability. This same (unidentified) informant had at the same time given them information by means of which they learned that the remaining stolen property had been purchased by Paciera and was at his residence. As stated by Spinelli, approving an affidavit in a cited decision: "A magistrate, when confronted with such detail, could reasonably infer that the informant (i. e., here, the policemen) had gained his information in a reliable way." 393 U.S. 417, 89 S.Ct. 589.
We are strengthened in our conclusion by Harris, the latest expression of the United States Supreme Court cited to us. The court's plurality opinion distinguished Spinelli on the ground that the affidavit there failed to explain how the affiant's unidentified informant came by his information.[4] Citing Jones, the opinion noted the sufficiency of an affidavit, even if based entirely upon hearsay, when the detailed and specific showing made by it afforded a "substantial basis" for crediting the hearsay due to corroborating circumstances *687 shown. 403 U.S. 580-581, 91 S.Ct. 2080, 29 L.Ed.2d 723. Citing Ventresca, the opinion noted that technical requirements of elaborate specificity have no proper place in the measurement of the sufficiency of affidavits, drafted as they are by nonlawyers in the midst and haste of a criminal investigation.[5] 403 U.S. 577, 91 S.Ct. 2079, 29 L.Ed.2d 723.
As Spinelli observed, "in judging probable cause magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense" and "their determination of probable cause should be paid great deference by reviewing courts." 393 U.S. 419, 89 S.Ct. 590. Further, where the law enforcement officers have respected the constitutional mandate to secure a warrant before searching, "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Ventresca, at 380 U.S. 109, 85 S.Ct. 746. See also Jones at 362 U.S. 270, 80 S.Ct. 735-736.
For the foregoing reasons, we do not find merit in these bills of exceptions.

Amended Motion for a New Trial
Of the remaining bills of exceptions prefected, only the final bill, that taken to the denial of an amended motion for a new trial, requires more than passing comment. This bill arises from the following circumstance:
The defendant is charged with receiving in 1971 stolen goods valued at sixty dollars, a violation of La.R.S. 14:69. He was tried in 1973 and convicted by a five-man jury.
At the time of the offense, the receipt of stolen goods valued at between twenty and one hundred dollars was punishable by imprisonment up to two years with or without hard labor, a "relative" felony triable by a jury of five, all of whom must concur in the verdict. La.Const. Art. VII, Section 41 (1921); La.C.Cr.P. art. 782. The penal statute was amended by Act 654 of 1972 so as to reduce the penalty for receiving stolen goods valued at one hundred dollars or less to imprisonment (without hard labor) for not more than six months, a misdemeanor triable by a judge without a jury. La.Const. Art. VII, Section 41 (1921); La.C.Cr.P. arts. 779, 933. The maximum fine for the offense prior to the 1972 amendment was one thousand dollars, after the amendment five hundred dollars.
The grounds alleged include that the 1971 penalty allowable for the offense for which charged is more severe than that permissible by the 1972 amendment and that the defendant was denied due process and the equal protection of the laws by being subject to a more severe penalty than that allowed by the present law.
In denying the motion, the trial court pointed out that the 1972 amendatory act had specifically provided: "This Act shall not apply to any crimes committed before the effective date of this Act. Crimes committed before that time shall be governed by the law existing at the time the crime was committed."
The repeal, re-enactment, or amendment of a penal statute does not extinguish or alter the liability for penalty of the former statute, unless the legislature so intends. La.R.S. 24:171; State v. Kent, 262 La. 695, 264 So.2d 611 (1972); State v. Cryer, 262 La. 575, 263 So.2d 895 (1972); State v. Bowie, 221 La. 41, 58 So. 2d 415 (1952). (Here, of course, the legislature *688 by express savings clause provided for retroactivity of the previous penalty.) By similar legislative provision and jurisprudential pronouncement, this is the general rule in other modern American jurisdictions, Bradley v. United States, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973), 22 C.J.S. Criminal Law § 26; 24 C.J.S. Criminal Law § 1982 e, although the rule may have been different at common law, see Bell v. Maryland, 378 U.S. 226, 84 S. Ct. 1814, 12 L.Ed.2d 822 (1964) and United States v. Tynen, 78 U.S. 88, 11 Wall. 88, 20 L.Ed. 153 (1871). See Comment, 121 U.Pa.L.Rev. 120 (1972).
No authority is cited by the defendant in support of his contention that due process or equal protection rights are offended when the amendatory statute continues or lessens the penalties proscribed for his conduct by the former act. In the absence of further reason than the bald assertion, we are unable to find merit to the contention.

Other Bills
The remaining bills do not require extended discussion: Bill Nos. 3, 6, 7, 8, and 9 deal with the alleged irrelevancy of certain state evidence, but the objections were correctly overruled for reasons noted by the trial court; Bill No. 4 concerns the sustaining of an objection by the state to a question to a witness about a nationwide policy of his employer prior to his employment; and Bill No. 10 was perfected as to the failure of the court to give two requested special charges (on reasonable doubt and on the duty of a juror to vote his own convictions), which were however adequately covered in the trial court's general charge. Likewise, the motion for the new trial was properly denied, and the bill taken to this denial is without merit.
The trial court may have erred in sustaining as irrelevant an objection to a question to the defendant as to his financial worth (apparently intended to show that a man of his worth would not have engaged in receiving stolen goods). However, if error was committed, it was harmless, for "the probative value of evidence as to the wealth of one accused of theft or receiving stolen things is so slight that it can hardly be said that its exclusion is prejudicial to the substantial rights of the accused". State v. Murphy, 234 La. 909, 102 So.2d 61, 63 (1958). See La.C.Cr.P. art. 921.

Decree
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
BARHAM, J., disents and assigns reasons.
DIXON, J., dissents. The affidavit does not disclose source of the information that the stolen goods were in defendant's premises.
BARHAM, Justice (dissenting).
I cannot agree with the majority's finding in this case that there existed sufficient probable cause upon which a valid search warrant could issue. The crucial issue requiring resolution is: Did the issuing magistrate have before him an adequate basis for determining that probable cause existed to believe that the home of defendant, Paul A. Paciera, contained a lawn hedger and miscellaneous papers, the only two items taken in the burglary of a particular residence which had not then been recovered by law enforcement officers.
The arrest of the perpetrator(s) of the burglary and the recovery of all the stolen property (except the lawn hedger and the papers) were effected when the arresting officers acted on the tip of an unidentified informant. This information, however, does not appear to me to have any rational relationship to a belief that the remaining unrecovered stolen goods were contained in the Paciera residence. The affidavit recites: "* * * On following up the informants [sic] information, Ptn Marshall and Thomas further learned [how and from whom?] that the lawn hedger and the misc. papers belonging to the victim were sold to a subject by the name of Paul *689 Paciera of 1042 West Mary Poppins Dr. Harvey, La. The informant also stated to the officers that Paul Paciera is a fence man for stolen property and that many of the known burglars often bring stolen property to Paciera to make their money for buying narcotics." The source of the information that the hedger and the papers were sold to Paciera is not revealed and no basis is given for gauging the credibility of that information. Since it is my belief that this information alone, if credible, may be seen as providing a basis for a finding of probable cause, the affidavit's failure to state the source of this information and give surrounding facts which would tend to establish the reliability of the information received and the reliability of the source of the information impels me to conclude that the magistrate in this case did not have sufficient probable cause to issue the search warrant.
The case of United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), heavily relied upon by the majority in its approval of the affidavit in this case, does not, in my opinion, support approval of the affidavit. In the Harris case it is noted that the affidavit there under consideration recounted personal and recent observations of criminal activity by the unidentified informant, "* * * factors showing that the information had been gained in a reliable manner, and serving to distinguish both tips from that held insufficient in Spinelli, * * * in which the affidavit failed to explain how the informant came by his information. * * *" In the case under consideration, the only "personal and recent" observation related was that of the police officers-informants, and the only thing they personally observed was the visit of one "known" burglar to the home of defendant during the period of a 7-hour stake-out, during which time there were several other visitors to the defendant's home. No "personal or recent" observations of the unidentified informant were recounted; the affidavit only states the unidentified informant's unsupported statement that defendant "* * * is a fence man for stolen property and that many of the known burglars often bring stolen property to Paciera to make their money for buying narcotics."
While it is true, as the majority notes, that the unidentified informant here had given information to the police officers-informants which proved to be reliable as to the subject burglary, no information was given by the unidentified informant which would lend any credibility or reliability to the source of the information regarding defendant's connection with the stolen goods or which would indicate what the source was or whether the source itself was reliable. The majority states: "The affiant had learned from reliable policemen-informants that the particular stolen property was on the Paciera premises, with the reliability of the information thus obtained being evidenced by the specific facts set forth showing that these policemen had personally recovered some of the property stolen in the same burglary by the identical means that they had learned that the particular stolen property was on the Paciera premises. * * *" It is my opinion that this statement by the majority draws incorrect conclusions from the facts set forth in the affidavit. I do not believe that the fact that the information given by the unnamed informant to the police-informants led to recovery of some of the stolen property from the Woodson burglary in any way evidences the reliability of the information received from some unspecified source that defendant was in possession of other stolen things from the same robbery. As far as the affidavit shows, it appears to me that the means by which the police-informants secured information leading to recovery of the stolen goods and the means by which the police secured information that Paciera was in possession of others of the stolen items are not at all shown to be identical.
It is my belief that Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969) should control here. The *690 information that defendant had the stolen items from the Woodson burglary in his possession was inadequate to support probable cause because the affidavit did not set forth any underlying facts which tended to establish the reliability of the unspecified source of the information or of the information itself. The statements accepted by the majority as corroborating the crucial information do not have any logical connection to the central issue for determination by the magistrate; that is, whether there was probable cause to believe that defendant had the stolen property in his possession at his residence. The information regarding defendant's reputation as a fence for stolen property presented in the affidavit was unsubstantiated and was not defendant's reputation with either the affiant or the police-informants, but with the unidentified informant.
Being of the opinion that the affidavit did not set forth sufficient probable cause for the issuance of the search warrant and that the defendant's motion to suppress was therefore erroneously denied, I must respectfully dissent from the affirmance of this defendant's conviction and sentence.
NOTES
[1] La.R.S. 14:69 was amended by Act 654 of 1972, after the 1971 offense charged to the defendant. This amendment is the subject of a bill taken by the defendant to the denial of an amended motion for a new trial. See below.
[2] The text of the affidavit recites as follows:

"On 2-7-71 at approximately 9:05 A.M. an aggravated burglary was committed at 3784 Mimosa Street, New Orleans, La. The victim of the Burglary was one George B. Woodson of the above address. The property which was reported stolen was recovered by Ptn Marshall and Thomas of the New Orleans Police Dept. The only property that was not recovered was one lawn hedger and misc. papers belonging to the above mentioned victim. Officers were able to effect their arrest and recover the property stolen by use of a confidential informant. On following up the informants information Ptn Marshall and Thomas further learned that the lawn hedger and the misc. papers belonging to the victim were sold to a subject by the name of Paul Paciera of 1042 West Mary Poppins Dr. Harvey, La. The informant also stated to the officers that Paul Paciera is a fence man for stolen property and that many of the known burglars often bring stolen property to Paciera to make their money for buying narcotics.
"It should be noted that both Ptn Marshall and Thomas are commissioned police officers of New Orleans Police Dept. and that they have several years of experience and that the informant they received their information from has been successful in the clearing up of about 15 residence burglaries in the Algiers area. Nine of the fifteen were with convictions and tour of the other charges are pending in court.
"On learning the above information the undersigned officer accompanied by Ptn Marshall and Thomas set up a stake out in the area of 1042 West Mary Poppins Dr. Harvey, La. The date of the stake out was 2-8-71. At approximately 2:40 P.M. the stake out was set up and at 9:30 P.M. the stake out ended. In watching the residence several subjects were seen going to the residence one of the subjects observed was Edward Johnson N/M 22 who is a known burglar from New Orleans, La.
"The above search is requested to recover the fruits of the above described crime."
[3] But see, Tiffany, McIntyre, and Rotenberg, Detection of Crime 118-20 (1967).
[4] Here, the affiant's informants were identified, i. e., the policemen. These informants had some firsthand corroboration, i. e., recovery of part of the stolen property, of the accuracy of their own informant.
[5] Thus, although inarticulately stated, the affidavit's conclusion that the unidentified informant had "also" stated that Paciera was a known fence might have led the magistrate to believe that this unidentified informant had (also) told the policemen that some of the stolen property was at the Paciera premises at the same time he told them where the other property was located.