384 So.2d 765 (1980)
STATE of Louisiana
v.
Robert J. MORVANT, Alfonse Campos and Bobbie Agent.
No. 66221.
Supreme Court of Louisiana.
May 19, 1980.
Rehearing Denied June 23, 1980.
*766 Owen J. Bordelon, Jr., Gretna, for defendants-respondents Robert J. Morvant and Alfonse Campos.
Douglas Wayne Mancuso, Metairie, for defendant-respondent Bobbie Agent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Harry Hardin, Asst. Dist. Attys., for plaintiff-relator.
*767 DIXON, Chief Justice.[*]
This case is before us on writs granted at the application of the state. The defendants, Robert Morvant, Alfonse Campos and Bobbie Agent, are charged by bill of information with the theft of $5000. Agent is also charged individually with the theft of an additional $3354. The purpose of the state's application for writs was to seek review of the action of the trial court in granting a defense motion to suppress statements made to the police and physical evidence that had been seized.
The record indicates that on April 26, 1978 Rodney Leonard and Robert Carroway, representatives of Norvell Wilder Supply Company, made a complaint to Detective Bond of the Jefferson Parish Sheriff's Office alleging that their firm had been the victim of theft, perpetuated by the defendants Morvant (a Norvell Wilder employee) and Campos (a former employee). The alleged thefts involved a scheme to defraud the company through phony transactions involving fictitious invoices.
Acting on the information given by Leonard and Carroway, Detective Bond, with two other officers, went to Morvant's office at Norvell Wilder at 7:55 a. m. on April 27; after identifying themselves as police officers and informing Morvant that they were investigating an internal theft at Norvell Wilder, they requested that Morvant accompany them to the sheriff's office. Morvant agreed, and was driven to the station in an unmarked police car. At the station he made a statement implicating himself and the other defendants. As a result, the other two defendants were arrested. Subsequent to his arrest, Agent made an inculpatory statement. In addition, Morvant signed a written consent to the search of the Warehouse of Wetlands Oil & Industrial Supply Company, Inc., a business run by him and Campos. A search of the warehouse resulted in the seizure of a number of items by the police.
Campos and Morvant argue that the action of the detective in requesting that Morvant accompany the officers to the station amounted under the circumstances to an arrest, unsupported by probable cause, and that, therefore, the statements made by the defendants, and the physical evidence seized in the search of the warehouse, must be suppressed as the fruits of an illegal arrest. To determine the validity of the defendants' claim, we must first determine if the defendant Morvant was arrested when he was picked up by the police, and, if so, whether the arrest was supported by probable cause.
C.Cr.P. 201 provides:
"Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him."
This court has held that the definition of arrest is keyed to the concept of restraint. The circumstances indicating an intent to effect a restraint on the liberty of an accused, rather than the precise timing of the words "you are under arrest," determine when an arrest has been made. State v. Tomasetti, 381 So.2d 420 (La.1980); State v. Mendoza, 376 So.2d 139 (La.1979); State v. Rawls, 376 So.2d 117 (La.1979). In the instant case, the detectives identified themselves and showed the defendant their credentials. They advised Morvant that they were investigating a theft at Norvell Wilder. Morvant was transported to the sheriff's office in a police car, after being requested to accompany the officers and not being informed that he could refuse to do so. The arrest register, reflecting information supplied by the arresting officer, indicated that Morvant had been placed under arrest at 7:55 a. m., the time that the officers approached him at work. Under the circumstances, we cannot say that the trial court erred in concluding that the officers *768 had the intent to restrain the defendant and actually did so.
A warrantless arrest must be based on probable cause. State v. Simms, 381 So.2d 472 (La.1980); State v. Tomasetti, supra; State v. Mendoza, supra. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Simms, supra; State v. Tomasetti, supra; State v. Mendoza, supra.
At the hearing, Detectine Bond testified about the facts he knew at the time he picked up Morvant. He stated that Leonard and Carroway had come to the station and reported seventeen transactions in which they believed fraud and theft had occurred. The company representatives and the detective went over each transaction, with the representatives explaining what they believed had occurred in each, and providing documentation to back up those beliefs. The two men told Bond that Morvant and Campos had formed a company in competition with Norvell Wilder, while Morvant was still working for that firm. Further, they reported that Morvant had on numerous occasions requested a secretary to write company checks out to cash, in violation of company policy. Those checks were "backed up by bogus invoices" from J. Ray McDermott Company. As an example, Detective Bond related one incident in which a check for $300 was requested to be made out for cash, for the purchase of equipment, backed up by a phony invoice. In substance, then, the representatives of Norvell Wilder reported to the police that Morvant had caused checks to be issued to cash, contrary to company policy, in order to satisfy falsified invoices.
The main thrust of the defendants' (Morvant and Campos) argument that the above facts did not amount to probable cause is that Detective Bond relied solely on the statements of the company representatives as to the facts that a theft had occurred and that Morvant was involved. The defendants point out that the detective admitted that he had relied on the representations of the Norvell Wilder employees concerning the meaning of the documentation they showed him. In particular, the officer relied on them as to the falsity of the J. Ray McDermott invoices, without independent investigation or checking with J. Ray McDermott. The defendants argue that the reliance on the Norvell Wilder representatives concerning the commission of the offense and the defendants' involvement was unjustified without independent investigation to corroborate their allegations.
Probable cause, however, need not be based on an officer's personal knowledge. An officer can act on knowledge supplied by a person, even if the identity of the informant is kept confidential. State v. Rudolph, 369 So.2d 1320 (La.1979); State v. Gipson, 359 So.2d 87 (La.1978); State v. Marks, 337 So.2d 1177 (La.1976). In State v. Paciera, 290 So.2d 681 (La.1974), this court, following Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), held that an affidavit submitted to a magistrate for a search warrant may be based on hearsay statements of an informant only if the affidavit sets forth a substantial factual basis from which the magistrate might find that both the informant and the information were reliable. This court has held that those requirements also apply to hearings to test the constitutionality of an arrest without a warrant. State v. Rudolph, supra. Therefore, at a hearing to suppress evidence obtained as a result of such an arrest, the state bears the burden of showing that the informant was credible and the information reliable.
The bulk of the jurisprudence interpreting the requirements of Paciera has involved confidential informants whose identities were not known to the issuing magistrate or the court reviewing the validity of the arrest. Paciera itself, however, gives some indication as to how the reliability of known sources of information, such as are involved in this case, are to be judged. In Paciera, the affiant's source of information *769 was identified as two of his fellow police officers whom we concluded were therefore reliable informants. Similarly, in the instant case, the informants are identified as being employees of a respected business, charged with the duty of reporting what they believed to be a theft from their employer. In light of the facts that the informants were known to be responsible members of the community, who saw no need to cloak their actions in anonymity, and who were employed in a responsible position with the victim of the alleged theft, Detective Bond was justified in believing they were reliable sources of information.
The record also establishes the reliability of the information they supplied. The Norvell Wilder representatives did not approach the police with a bald assertion that Morvant had been stealing from their employer. Rather, they gave Detective Bond a detailed account of seventeen transactions which they believed involved theft and fraud. They explained what they thought happened in each transaction. They supplied written documentation including the allegedly falsified invoices and the checks written to pay for them. The defendants argue that the officer was not justified in relying on the company representatives' statement that those invoices were not genuine, and that he should have corroborated the statement by checking with J. Ray McDermott. It is apparent, however, that the Norvell Wilder representatives were in at least as good a position to tell whether the invoices were genuine as anyone at McDermott, because they were in a position to know if the goods and equipment represented by the invoices had been delivered. The officer was justified in relying on the statements of Leonard and Carroway because they were in a position to be acquainted with the matters they were relating, and because they gave him sufficient information, with details and documentation, for him to conclude that the information was reliable. See State v. Paciera, supra; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
We conclude that, when supplied with reliable information from credible sources that the defendant Morvant had for a period of time been engaged in a scheme in which he directed that company checks be issued to pay for goods and equipment which had not been supplied, through the use of bogus invoices, Detective Bond had probable cause to arrest Morvant.
Since the officer's action in picking up Morvant was justified, the statement he made in custody, after being advised of his constitutional rights, need not be suppressed. It follows that the subsequent arrests of the defendants Campos and Agent are valid because, at the time they were effected, the officers had probable cause, arising from the defendant Morvant's statement, to believe that they were involved in the theft. The consent given by Morvant to search the Wetlands warehouse must also be considered untainted by any prior illegality. The statements made by the defendants Morvant and Campos, and the evidence seized in the search of the Wetlands warehouse, were therefore improperly suppressed by the trial court.
The defendant Agent did not rely on the alleged invalidity of Morvant's arrest in his motion to suppress the inculpatory statement he made after being arrested. In his motion, and in brief to this court, Agent claims that the statement was not made freely and voluntarily. The record indicates that Agent was picked up or arrested in much the same way as Morvant had been. He was approached by police officers who identified themselves and indicated that they were investigating a theft, and requested that he accompany them to the station. He was transported to the station in a police vehicle, and, after arriving, was told of his rights and signed a "rights form." He was then questioned.
The basis of the defendant Agent's argument is that his statement was not free and voluntary because it was given only after he was led to believe that he would not be prosecuted and would instead be used as a witness for the state. At the hearing on the motion to suppress, evidence was heard *770 from the defendant and the officer who had questioned him.
That officer, Officer Thibodeaux, testified that initially Agent denied any knowledge of a theft, but when confronted with incriminating evidence, admitted his involvement. Thibodeaux admitted discussing the possibility that the defendant would be used as a witness and be given immunity, but when first questioned could not recall when that discussion took place. Later in his testimony he stated that it was only after the statement had been taken that he had told the defendant that he would check with the district attorney to see if the defendant would have to be arrested, or if he could be used as a state's witness.
The defendant, on the other hand, testified that before the statement was given, he was told that he was not a suspect and that he was going to be used as a witness. He also testified that the officer told him that he would recommend to the district attorney that he not be prosecuted. According to the defendant, the statement was, therefore, made under the impression that he was not going to be prosecuted but that he was only to be used as a witness for the state.
After the defendant testified, the officer was recalled to the stand. Officer Thibodeaux at that point departed from his prior testimony and stated that the only thing he had told the defendant was that his employer (J. Ray McDermott) was not going to press charges.
In State v. Jackson, 381 So.2d 485, 487 (La.1980), this court enunciated the principles under which the admissibility of a confession must be judged. We noted first that as a matter of federal constitutional law, a confession obtained by "`any direct or implied promises, however slight, [or] by the exertion of any improper influence'" must be considered involuntary and inadmissible. Bram v. United States, 168 U.S. 532, 542-543, 18 S.Ct. 183, 42 L.Ed. 568 (1897). We noted that the rationale for that rule is that even the slightest inducements held out by a person in authority, such as a police officer or a prosecutor, may render a confession involuntary. We further noted that immunity from prosecution is a particularly powerful inducement, and has been said to be, in Louisiana, always "sufficient to deem a confession made in reliance thereon involuntary." 14 La.L. Rev. 642, 662 (1954).
As to the Louisiana law concerning the admission of confessions, we stated in State v. Jackson, supra:
"In Louisiana the statutorily mandated test for voluntariness is not whether a confession was induced by improper external forces but whether the confession was free and voluntary and `not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.' R.S. 15:451. The state has the burden of affirmatively proving that a confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises and must prove beyond a reasonable doubt that a confession was free and voluntary. R.S. 15:451, C.Cr.P. Art. 703(C), State v. Coleman, 369 So.2d 1286 (La.1979); State v. Volk, 369 So.2d 128 (La.1979); State v. Weinberg, 364 So.2d 964 (La.1978)."
Conclusions of a trial court on the credibility and weight of testimony relating to the voluntariness of a confession are given great weight and will not be overturned unless they are not supported by the evidence. State v. Jackson, supra; State v. Manning, 380 So.2d 46 (La.1980); State v. Gaines, 354 So.2d 548 (La.1978). Here, the trial court's determination that Agent's statement was inadmissible was supported by the evidence.
The essence of the officer's testimony was that the defendant was only told that the district attorney would be consulted as to the possibility that the defendant would be a state's witness, and that he was told that after the statement had been made. The defendant, on the other hand, testified that before giving the statement he was promised that he would not be prosecuted, that he was not a suspect and would be *771 used as a witness (and impliedly be given immunity). There is no dispute that at some point statements were made to the defendant, either that he might be given immunity and used as a witness, or that the district attorney would be consulted to determine if the defendant would be used as a state's witness (a term connoting immunity).
After reviewing the record, we conclude that the trial court did not err in holding that the statements had been made under the influence of promises that the defendant would not be prosecuted. The testimony of the officer underwent significant changes during the course of the hearing, casting reasonable doubt upon the accuracy of his testimony. The defendant consistently testified that he had been led to believe, prior to giving the statement, that he would not be prosecuted and that he would instead be used as a witness for the state. Under the circumstances, the trial court did not err in concluding that the statement was obtained by "direct or implied promises, however slight" or under the influence of "inducements or promises," and that the state failed to prove beyond a reasonable doubt that the confession was free and voluntary.
For the reasons assigned, the trial court's granting of the motion to suppress filed by defendants Morvant and Campos is reversed, and the motion is denied. The granting of defendant Agent's motion to suppress his statement is affirmed. The case is remanded to the trial court for further proceedings.
NOTES
[*] Honorable Edward A. de la Houssaye, III participated in this decision as an Associate Justice Ad Hoc.