392 So.2d 381 (1980)
STATE of Louisiana
v.
Freddie CANN.
No. 66349.
Supreme Court of Louisiana.
December 15, 1980.
Concurring Opinion January 16, 1981.
*382 Thomas W. Davenport, Jr., Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Martha E. Minnie weather, Asst. Dist. Atty., for plaintiff-appellee.
LEMMON, Justice.
This is an appeal from a conviction of possession of cocaine. Finding prejudicial error in the prosecution's introduction of evidence of other crimes, we reverse the conviction.
In executing a warrant for the search of a trailer occupied by defendant and his brother, law enforcement officers discovered marijuana in the trailer and a small amount of cocaine in the refrigerator. Both brothers were charged with possession of marijuana with intent to distribute and possession of cocaine. Pursuant to a plea bargain defendant and his brother pleaded guilty to first offense possession of marijuana, and the prosecution dismissed all other charges (including a prior unrelated marijuana and cocaine charge against defendant), except the present charge for possession of cocaine.
At trial an officer testified on direct examination that defendant stated he believed the white powder in the refrigerator was sugar and did not know it was cocaine. With the issue of guilty knowledge thus framed, the prosecutor sought to introduce documentary evidence of defendant's prior *383 guilty plea to possession of marijuana.[1] The prosecution contended this evidence was admissible either as evidence of guilty knowledge under R.S. 15:445-446 or as evidence seized as part of res gestae under R.S. 15:447. Over defense counsel's objection the judge admitted the bill of information charging defendant with possession with intent to distribute and the minutes of the guilty plea to the reduced charge of simple possession. No attempt was made to introduce the marijuana seized at the time of the seizure of the cocaine.
Evidence of other crimes is generally inadmissible because of its tendency to portray defendant as a "bad character". State v. Moore, 278 So.2d 781 (La.1972); State v. Gaines, 340 So.2d 1294 (La.1976); State v. Frentz, 354 So.2d 1007 (La.1978). Nevertheless, R.S. 15:446 authorizes the admission of evidence of extraneous crimes, when knowledge forms an essential part of the inquiry, for the purpose of showing guilty knowledge.
While knowledge is an essential element of the crime of possession of a controlled dangerous substance, evidence of other crimes for the purpose of showing guilty knowledge is not automatically admissible in all possession cases. The probative value of the evidence must outweigh its prejudicial effect on the jury. State v. Frederick, 340 So.2d 1353 (La.1976). One of the factors to be considered in weighing the probative value of evidence of extraneous crimes against its prejudicial effect is whether knowledge is truly a contested issue under the facts of the particular case.[2] See State v. Williams, 352 So.2d 1295 (La. 1977).
In the present case cocaine was discovered in the refrigerator of a trailer occupied by defendant and his brother. Two women were also at the trailer when the search was conducted.[3] Under these circumstances defendant's guilty knowledge (that the white powder was cocaine) arguably was a truly contested issue, so that evidence of possession of other drugs could have significant probative value as to the issue of knowledge.
The prosecution, however, did not introduce either the other dangerous substances found in the search or testimony as to their discovery. Rather, the prosecution introduced the bill of information charging defendant with possession of marijuana with intent to distribute and the minutes of the guilty plea to the reduced charge. The bill of information charging the more serious crime contained the prejudicial and inadmissible opinion of the district attorney as to defendant's knowledge and intent. The minute entry of the guilty plea to the reduced charge constituted evidence of judicial approval of a plea bargain (that could have been based on numerous unrevealed considerations), rather than merely a factual admission that defendant knowingly possessed marijuana.[4] Even more significantly, the document may well have created the impression that defendant was guilty of charges that were dismissed and had "gotten off lightly".[5]
When all of these facts and circumstances are considered, the admission of evidence relating to defendant's being charged with other crimes was improper and highly *384 prejudicial. While proper evidence of the discovery of marijuana in the search arguably had probative value on the issue of guilty knowledge that outweighed its prejudicial effect, evidence raising an implication of a plea bargain with the prosecution clearly did not. See State v. Gaspard, 301 So.2d 344 (La.1974).
Finally, evidence that defendant was charged with possession of marijuana with intent to distribute was not admissible as part of the res gestae. The bill of information and the minute entry of the guilty plea to the reduced charge were so far removed in time and place from the seizure that they cannot reasonably be so classified.[6]
For these reasons the conviction and sentence are reversed, and the matter is remanded for a new trial.
REVERSED AND REMANDED.
DENNIS, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur in the reversal of the defendant's conviction being of the opinion that the motion to suppress filed by the defendant and denied by the trial court should have been granted. The search warrant affidavit did not recite sufficient trustworthy hearsay information, or sufficient individual police officer observations, or an adequate combination of both to establish probable cause.

1.
On July 29, 1978 police officers Toney, Givens, and Worley searched a trailer occupied by the defendant and others. This search was conducted pursuant to a warrant obtained by these officers. The search revealed both marijuana and cocaine on the premises. As a result of this search defendant went to trial for possession of cocaine.
I do not believe that the affidavit given by the officers in applying for the search warrant is sufficient to establish the required probable cause necessary for the warrant to be issued. The pertinent portion of the affidavit reads as follows:
"Within the last 30 days your affiant has been contacted by a confidential informant and this informant began providing information about several known narcotic law violators in the Ouachita Parish area. The detailed information provided by this confidential informant has been checked by your affiants and this information has been verified as true and correct. The confidential informant that has provided reliable information has informed your affiants of violations that other reliable confidential informants have also stated to your affiants. This reliable confidential informant has turned over to affiants Worley and Toney marijuana in the past. This most recent reliable confidential information stated to your affiants that Freddie and Donell Cann located in trailer residence at 504 Morton Street in Monroe, Louisiana have in their possession marijuana which is for sale.
"Within the last 72 hours affiants Toney and Givens searched the reliable confidential informant and found no controlled dangerous substances, then the reliable confidential informant was seen by affiants going into the trailer residence at 504 Morton. The reliable confidential informant was also seen by affiants leaving the trailer residence and immediately turned over to affiants a bag of suspected marijuana which was tested and the test proved positive. The reliable confidential informant observed both Freddie and Donell Cann in their trailer residence. This was a direct controlled surveillance buy and the only time this reliable confidential informant was out of the affiants sight was when the reliable confidential informant was in the trailer.
"Deputy Toney has personal knowledge of the Cann's. Freddie Cann was arrested by Deputy Toney for possession of both marijuana and cocaine with intent to distribute. Deputy Toney has found a quantity of marijuana in the outside storeage *385 shed at 504 Morton in the past. Deputy Toney has also found cocaine in the trailer residence at 504 Morton."

2.
Article 1, § 5 of the 1974 Louisiana Constitution and the Fourth Amendment to the United States Constitution protect our citizens against unreasonable searches and seizures and provide that no warrant authorizing a search or seizure shall be issued without probable cause supported by oath or affirmation. In addition Louisiana Code of Criminal Procedure Article 162 provides that a search warrant "may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant." The philosophy underlying these prerequisites was expressed more than thirty years ago by United States Supreme Court Justice Jackson:
"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948).
Nevertheless, the facts necessary to show probable cause may be established by hearsay evidence. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); State v. Paciera, 290 So.2d 681 (La.1974). The Supreme Court in Aquilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), laid down the test by which information given the affiant by an unidentified informant could be considered by the magistrate in determining if there was probable cause upon which a search warrant should issue.
"[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed .... was `credible' or his information `reliable.'" 378 U.S. at 114-15, 84 S.Ct. at 1514, 12 L.Ed.2d at 729.
A careful analysis of Aquilar reveals that its two part test is designed to perform different functions. The first part is designed to insure that the informant obtained his information by personal observation, or in some other dependable manner rather than through mere rumor. This "basis of knowledge" test is a corollary of the Fourth Amendment's requirement that the magistrate, and not the police officer-affiant or his informant, shall weigh the facts and decide whether they establish probable cause. See Spinelli v. United States, infra, 393 U.S. at 424, 89 S.Ct. at 584, 21 L.Ed.2d at 648 (White, J., concurring); Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L.Rev. 741, 751-52 (1974).
The second prong of Aquilar's two pronged test is aimed at determining the veracity of the source of the hearsay information. Aquilar held that this test could be satisfied in either of two ways: (1) The affidavit may recite facts from which the magistrate could conclude that the informant is credible, or (2) It may recite facts from which the magistrate could conclude that the informant's information is credible. The "veracity prong" of Aquilar's two part test is designed to perform the same function that the oath and the magistrate's direct observation serve in evaluating the truthfulness of the affiant. As the oath serves as a hedge against issuing an affidavit based on false allegations, so too does the requirement that there be included in the affidavit facts which indicate a reason for believing in the veracity of the source of the information. See Moylan, supra, at 750-51.
This Court has followed the dictates of Aquilar and has held that an affidavit relying on an unidentified informant as the *386 source of information "must set forth underlying circumstances and details sufficient to provide a factual basis by which the magistrate might find reliable both the informant and the information given by him." State v. Paciera, supra, 290 So.2d at 685-86.[1]

3.
The Supreme Court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), supplemented Aquilar by showing him how initial structural flaws in the warrant application might be shored up. It looked first to a defect in the application as measured against the veracity prong. If the internal recitation about the informant or about the circumstances under which the information was furnished failed to establish that he was "credible" or that his information was "reliable" then the independent observations made by the officers-affiants might be looked to by way of verification, corroboration or authentication. Moylan, supra, 748-49. Spinelli explained its independent verification technique in the following terms:
"The informer's report must first be measured against Aguilar's standards so that its probative value can be assessed. If the tip is found inadequate under Aquilar, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in Aquilar must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aquilar's tests without independent corroboration?... A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip whicheven when partially corroboratedis not as reliable as one which passes Aquilar's requirements when standing alone." 393 U.S. at 415-16, 89 S.Ct. at 588-89, 21 L.Ed.2d at 643.
Spinelli treated a structural flaw in the "basis of knowledge" prong of an affidavit as a distinct and independent problem. The court pointed out that, even lacking an explicit recitation that the informant had personally observed the incriminating facts, the information coming from the informant might be furnished in sufficient detail to imply that he was speaking from first hand information, and not just passing on a rumor. Spinelli described this "self verifying detail" technique as follows:
"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.
"The detail provided by the informant in Draper v. United States ... provides a suitable benchmark .... A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way." 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

4.
The affidavit in this case is deficient as measured by each prong of the Aquilar test.[2] It fails the "basis of knowledge" test because the magistrate was not informed of *387 the underlying circumstances from which the informant concluded that, within the past 30 days, "Freddie and Donell Cann located in trailer residence at 504 Morton Street in Monroe, Louisiana and have in their possession marijuana which is for sale." It fails the "veracity" test because the internal recitation about the informant or the circumstances under which the information was furnished does not contain any facts from which the magistrate reasonably could have concluded that the informant was credible or that his information was reliable when he reported, within the last thirty days, that the Canns had in their trailer marijuana which was for sale.
When the affidavit fails to assert that the informant is recounting firsthand observations, the curative technique suggested by Spinelli is that of "self verifying detail." Moylan, supra, at 749-50. We do not find in the affidavit at bar, however, such detail from which the magistrate "could reasonably infer that the informant had gained his information in a reliable way." Spinelli, supra, 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644. The fact that the informant, after reporting marijuana was for sale at the defendant's trailer at some time within 30 days before the application, returned to the trailer and obtained marijuana does not furnish details which verify that his initial report was based on personal observation, rather than mere rumor. That the tip is not completely fabricated does not suggest that the informant's knowledge was obtained through personal observation or other dependable manner. Comment, 54 Cornell L.Rev. 958, 963 (1969).
Even where the internal evidence about the informant, or about the circumstances under which the information was furnished, fails to establish intrinsically personal "credibility" or informational "reliability," external evidence, contained elsewhere in the application, may be examined to see what buttressing it provides. Moylan, supra, at 777. The test at this point is whether the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration. Spinelli v. United States, supra, 393 U.S. at 415-16, 89 S.Ct. at 588-89, 21 L.Ed.2d at 643.
Applying these precepts, I do not find that the other allegations in the affidavit fully corroborate the informant's tip. The informant's story, reported some time within thirty days before the application was prepared, was that at an undisclosed time defendants had marijuana which they would sell at their trailer. Perhaps, the fact that a bag of marijuana was obtained at the trailer by the informant, within three days before the application was made, tends to corroborate the tip that marijuana was for sale in the past. But "[a] magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informant's tip whicheven when partially corroboratedis not as reliable as one which passes Aquilar's requirements when standing alone." 393 U.S. at 415-16, 89 S.Ct. at 584, 21 L.Ed.2d at 643.
The tip, although partially corroborated, is not as trustworthy as a tip which would pass Aguilar's tests without independent corroboration. The fact that a bag of marijuana was present at the trailer within three days before the application for the warrant does not necessarily mean that marijuana was present before or afterwards. The informant's acquisition of marijuana does not conclusively indicate that it was sold to him; the affidavit is silent as to whether he was given money before he entered the trailer and whether any was in his possession when he returned. The allegation that an officer found marijuana in a shed outside the trailer is not necessarily related to recent events or the defendants; the affidavit does not specify when the seizure occurred or even state that the defendants occupied the trailer at this time. The arrest of defendant for alleged criminal acts unrelated to the specific incident reported by the informant is entitled to no weight in appraising the magistrate's decision to issue a warrant. State v. Boneventure, 374 So.2d 1238 (La.1979). That the informant gave the officers information of unknown content which matched data *388 obtained from other informers, whose basis of knowledge and veracity were not set forth in the affidavit, is an unsatisfactory basis upon which to establish any factual indicia for probable cause. State v. Tassin, 343 So.2d 681, 691 (La.1977). All these weaknesses make for a much less reliable tip than one which passes Aquilar's requirements when standing alone.

5.
Since none of the hearsay information contained in the affidavit passes muster under the Aquilar tests, or the Spinelli curative techniques, it must be determined whether the independent police observations are sufficient in themselves to demonstrate probable cause.
The independent police observations were that (1) The informant obtained a bag of marijuana from the defendant's trailer within three days before the application was presented; (2) At an unspecified time the defendant was arrested for possession of cocaine and marijuana; (3) At an unspecified time marijuana and cocaine were found on the premises occupied by the defendant at the time of the search; and (4) The informant, at unspecified times, had turned over marijuana to the police officers.
These independent observations do not furnish probable cause to believe that marijuana was located in the defendant's trailer at the time the warrant was applied for.
The affidavit does not state that the informant observed any marijuana on the premises other than the bag he obtained. An affidavit which recites credible facts showing merely that a small amount of marijuana was taken from a particular place within the previous seventy-two hours does not, without more, establish probable cause to believe that other marijuana was located there at the time the warrant was to be issued. See State v. Lewis, 385 So.2d 226 (La.1980); State v. Boneventure, supra; State v. Valentine, 355 So.2d 897 (La.1978). Unless the other independent observations of the police officers can be combined with this information to show a probability that other marijuana was located in the trailer at the time the application was presented, there was no probable cause to search the trailer. See 1 LaFave, § 3.7.
The remaining independent observations have no probative force to show that there was a likelihood other marijuana was located at the trailer for several reasons. First, the affidavit fails to specify the times at which the observations were made. Here, the affiant's information merely asserted that at some point in the past, which could have been a day, week, months or years prior to the date of the affidavit, drugs were found at the premises now occupied by the defendant. Whether the previous observations had any relation to defendant, or whether they reasonably indicate a continuing course of conduct critically depend on the time of those observations. It is well settled that if the time of occurrence of the facts relied upon is critical in determining whether there is probable cause to search, then surely "failure to state when the alleged facts occurred is fatally defective." 1 LaFave, § 2.7, p. 693; State v. Rosenthal, 269 N.W.2d 40, 41 n.2 (Minn.1978); Thomas v. State, 353 So.2d 54 (Ala.App.1977); Pierson v. State, 338 A.2d 571 (Del.1975); Bailey v. State, 131 Ga.App. 276, 205 S.E.2d 532 (1974); Walker v. State, 49 Ala.App. 741, 275 So.2d 724 (1973); People v. Padilla, 182 Colo. 101, 511 P.2d 480 (1973); Bruce v. Commonwealth, 418 S.W.2d 645 (Ky.1967). See State v. Morgan, 376 So.2d 99 (La. 1979); State v. Loehr, 355 So.2d 925 (La. 1978); State v. Thompson, 354 So.2d 513 (La.1978).
Additionally, arrests for alleged criminal acts, or assertions of a suspect's reputation for past criminal activity, unrelated to the specific incident related in the affidavit is entitled to no weight in the magistrate's determination of probable cause. State v. Boneventure, supra; State v. Tassin, supra. Finally, the fact that the informant turned over drugs to the officer at some point in the past was not connected with the defendant or the place to be searched.
Accordingly, the motion to suppress should have been granted because the search warrant affidavit did not contain sufficient trustworthy hearsay information, *389 or sufficient independent police officer observations, or an adequate combination of both, to establish probable cause to search.
NOTES
[1] Because of our disposition of the case it is not necessary to determine whether this was the proper way to frame the issue.
[2] For example, if a person is charged with possession after a legal search of his person reveals narcotics taped to his navel, the prosecution could not seriously contend that knowledge is such a disputed issue that evidence of other crimes has any necessary or probative value on the issue.
[3] There was different luggage and men's clothing in each of the two bedrooms, indicating that defendant and his brother both lived there. The absence of women's clothing indicated the two women were visitors.
[4] Guilty pleas are generally admissible as admissions of the elements of the offense to which the plea is entered. See Davis v. Bankston, 192 So.2d 614 (La.App. 3rd Cir. 1966); Pugh, Louisiana Evidence Law, p. 443 (1974).
[5] The guilty plea, viewed by the jury as a confession, obviously was more devastating than mere evidence that marijuana was found on premises occupied by defendant.
[6] Again, the marijuana itself or testimony as to its discovery might have been admissible as part of the res gestae.
[1] According to Judge Moylan, Aquilar in outline form was concerned with

The Trustworthiness of Hearsay
I. The Basis of Knowledge Prong
II. The Veracity Prong
A. The Credibility Spur
B. The Reliability Spur
To avoid confusion he recommended limiting use of the term "reliability" as a word of art, to refer to the second spur of the veracity prong. Moylan, supra, at 756. Some of the type of confusion spoken of by Judge Moylan may have resulted from our use of the word in speaking of both Aquilar prongs in Paciera.
[2] The failure to pass the test of either prong is fatal and makes discussion of only one prong necessary in this opinion. However, for purposes of clarity I will discuss the frailties of the affidavit under the test of each prong.