461 So.2d 439 (1984)
STATE of Louisiana
v.
Harold DiMAGGIO.
No. 84-KA-79.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1984.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., for State of Louisiana.
Harry J. Morel, Jr., Dist. Atty., Don Almerico, Gregory C. Champagne, Asst. Dist. Attys., Twenty-Ninth Judicial District Court, Hahnville, Ralph L. Barnett, Gretna, for defendant-appellant.
Before CHEHARDY, BOWES and GAUDIN, JJ.
BOWES, Judge.
So far as we can determine, this is a case of first impression in the state courts of Louisiana interpreting the very recent U.S. Supreme Court decision, United States v. Leon, ___ U.S. ___, 104 S.Ct. 3405, 82 L.Ed.2d 677, 1984.
On January 20, 1983, appellant, Harold DiMaggio, was charged by a bill of information with the theft of materials from the Waterford 3 Nuclear Power Generating Facility, having a value of more than $100.00, but less than $500.00.
A motion to suppress the evidence was heard on November 29, 1983, and was denied by the court, after hearing evidence and arguments presented by both parties.
Following the court's denial, a plea agreement was reached whereby the defendant would plead guilty, under LSA C.Cr.P. art. 894, to a reduced charge of misdemeanor theft of less than $100.00. The plea was made with the defendant reserving his right to appeal the adverse ruling on the motion to suppress pursuant to State v. Crosby, 338 So.2d 584 (La.1976).
The appellant was sentenced to a six month suspended sentence and fined $250.00. He was also ordered to make restitution.
Appellant now brings this appeal on the grounds that the search warrant used to *440 obtain evidence in this case is allegedly invalid. We affirm the district court's ruling.
Appellant argues that the warrant issued for the search of defendant's home was invalid for the following reasons: (1) It did not contain a sufficient recitation of such underlying circumstances as required to support a finding of probable cause; and (2) the application failed the two-pronged test to determine the reliability of both the informer and the information set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and as applied in Louisiana cases.
A reading of the warrant reveals that the affiant, a Jefferson Parish detective, stated he had received his original information from a St. Charles Parish officer, whom he knew was chief deputy and commander of the Criminal Investigation Division, who had been conducting an investigation into a systematic theft of steel from the construction site at the Louisiana Power and Light Waterford 3 plant; that this steel had then been used to construct two or possibly three boats, one of which could be located at the defendant's residence, along with a steel mailbox stand, also fabricated from the stolen material. This information was corroborated only to the extent that the affiant, for purposes of verification, personally observed at the defendant's residence a steel mailbox, a rust-colored boat on blocks and a large welding machine in the fenced yard. The defense notes that the affidavit does not contain any mention of the circumstances of these systematic thefts of steel, how it was that suspicion was directed towards the defendant, or how the stolen steel could be linked to the steel used in the boat and the mailbox. Because State v. Feeback, 414 So.2d 1229 (La.1982), and State v. Flood, 301 So.2d 637 (La.1974), limit the reviewing court to the four corners of the search warrant to seek probable cause, the defense avers that the motion to suppress should have been granted.
The State argues that to determine probable cause for a search warrant the evidence must be viewed from a common sense and realistic approach [State v. Weinberg, 364 So.2d 964 (La.1978)] and that the standard for probable cause for a warrant is much less than for proof beyond a reasonable doubt [State v. Ogden, 391 So.2d 434 (La.1980)]. It is further maintained by the State that since the original informant was a named experienced law enforcement official (chief deputy and commander of his division), and his information was further corroborated by the affiant, another experienced police officer, the Aguilar/Spinelli test was met (although this test was not identified as such by the State). In conclusion, the prosecution submits that the trial court was correct in its ruling since the court held at the hearing on the motion that "a magistrate, a magistrate in Jefferson, upon reading this affidavit and upon using his common sense certainly could find the underlying circumstances in this affidavit for the issuance of this search warrant." The trial judge then went on to explain the facts and circumstances upon which he based his decision.
The test to determine probable cause in a search warrant was recently redefined in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), wherein the court chose to alter the stringent two-pronged test established by Aguilar and Spinelli and to substitute in its place a more flexible approachanalysis of the "totality of the circumstances." See also State v. Manso, 449 So.2d 480 (La.1984). The court found that the two-pronged test was too rigid since "probable cause is a fluid conceptturning on the assessment of probabilities in particular factual contextsnot readily, or even usefully, reduced to a neat set of legal rules." Supra, 103 S.Ct. at 2328.
The court noted that:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and *441 "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Jones v. United States, supra, 362 U.S. at 271, 80 S.Ct. at 736. [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)]." Supra, 103 S.Ct. at 2332.
The court cautioned that there were certain limits, however, beyond which an issuing magistrate could not venture. A wholly conclusionary statement by the affiant fails to meet even the more fluid test set forth in the decision. A sworn statement to the effect that the affiant "has cause to suspect and does believe that" [see Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159] or that he had "received reliable information from a credible person and believe[s]" [see Aguilar, supra] that certain evidence or contraband is located in a particular place does not constitute a sufficient basis from which a magistrate could find probable cause. Either wording is a prime example of a "bare bones" affidavit.
It was further noted by the court that although the rigid test of Aguilar/Spinelli had been supplanted, the two elements of this test are still viable considerations which are applicable within the totality of the circumstances analysis. A deficiency in one element may, however, be compensated by a strong showing in the other. But the court further explained that there must be an independent corroboration of the information received by the officers seeking the warrant.
It would appear in the instant case that although the St. Charles Parish police officer may have outlined his case to the affiant, against the defendant, in great detail, all of this information was not included in the affidavit; also not included was any statement, other than that he was an employee on the construction site, to tie the defendant with the thefts from Louisiana Power and Light. The affidavit stated that steel had been stolen from the site and that various objects made of steel were located at the defendant's residence, but no connexity between the two was actually stated by the affiant. Further, the investigating officer apparently limited his personal investigation to a visual check of the defendant's residence where he was able to observe the described mailbox and one of the boats. The affidavit does not contain any further corroboration or independent investigation.
Accordingly, we find that even employing a common sense approach, and using the "totality of the circumstances" test adopted in Gates, supra, the issuing magistrate did not have a substantial basis from which to conclude that probable cause for the warrant existed.
However, very recent analysis of the applicability of the exclusionary rule to situations similar to the present case was set forth by the United States Supreme Court in United States v. Leon, supra, where the issue before the court was ...
[W]hether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.
The court stated that in deciding this issue there must be a balance between 1) the protection of the Fourth Amendment right to privacy and 2) the deterrence of official misconduct. It further stated that criminal defendants should be tried on the basis of all of the evidence which would have a bearing on the truth of the matter.
The court explained that the exclusionary rule is a judicially-created remedy designed to safeguard Fourth Amendment rights and is not a personal constitutional right. Once the wrong condemned by the amendment has occurred, the invasion of privacy cannot be cured. The question to be decided, therefore, is not if there has been an *442 invasion of privacy, but, rather, if the deterrent effect of the exclusionary rule would be enhanced by the exclusion of the evidence in such a case. In order to determine if evidence should be excluded, the court in the hearing on a motion to suppress should make a twofold inquiry: (1) Was there a 4th Amendment violation and (2) should it (the court) apply penal sanctions, i.e., exclude the evidence seized?
The court concluded that, because the exclusionary rule was adopted as a measure of curtailing police misconduct, and not as a punishment for errors on the part of issuing magistrates and judges, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial cost of exclusion." (104 S.Ct. p. 3421) Therefore, the exclusionary rule can be modified so that evidence obtained by officers acting in reasonable reliance on a search warrant signed by a detached and neutral magistrate, but ultimately found to be unsupported by probable cause, may be used in the prosecution's case in chief.
Although deference should be accorded the issuing magistrate, three inquiries must be made: (1) was the affidavit upon which the warrant was based knowingly or recklessly false; (2) was the magistrate truly neutral and detached, or merely a "rubber stamp" for the local law enforcement agency; and (3) did the magistrate properly apply the totality of the circumstances analysis (as per Illinois v. Gates, supra) to the warrant application and check the form employed for appropriateness to the situation. A failure of any of these factors would result in an invalid warrant. The evidence obtained therefrom, however, need not be necessarily excluded. The purpose of the exclusionary rule is to deter police misconduct. Therefore, the application of the exclusionary rule should continue where there has been a substantial and deliberate violation of Fourth Amendment rights such as in inquiries (1) and (2) above.
The court found that to exclude evidence because of a magistrate's error is better corrected by his being put on notice by a reviewing court that the warrant is invalid. An extreme sanction, such as exclusion of relevant evidence for a magistrate's error, would be overkill. Unless it is found that the police had acted with such a lack of good faith that they could not have reasonably relied on the magistrate's determination of probable cause, the evidence will be admitted.
Several examples of lack of good faith on the part of the affiant are noted by the court: misleading of magistrate as to circumstances of the case or deliberate falsehood; complete abandonment of issuing magistrate of his judicial role to the extent that a reasonably well-trained officer could not rely on the warrant; misplaced reliance on an affidavit totally lacking probable cause or any other "bare bones" affidavit turned over to another officer, ignorant of the situation, to serve; and, finally, a facially and technically deficient warrant, lacking, for example, the particular place to be searched or thing to be seized.
In the concluding paragraph of Justice White's majority opinion in Leon, supra, he states:
In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. [...] The affidavit related the results of an extensive investigation and [...] provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.
Although no Fourth Amendment decision marking a "clear break with the past" has been applied retroactively, the Leon decision, *443 citing United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) as authority, noted that the court has not been willing to conclude that new Fourth Amendment principles always are to have only prospective effect. In the Johnson case, supra, 102 S.Ct. at 2594, the court held that, subject to certain stated exceptions, "a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered."
We find the case before us strikingly similar to Leon, supra, which also came before the court following a ruling on a motion to suppress. In the case at bar, there is not even a hint or suggestion that the magistrate was anything other than neutral or detached. He simply improperly applied the totality of the circumstances analysis in a close judgment call. Certainly, the affidavit in question was neither knowingly nor recklessly false as it contained many truths already verified. The affiant, a Jefferson Parish detective of long experience, of which this experienced magistrate no doubt had knowledge, had obtained his initial information from a seasoned fellow law enforcement officer, albeit from a different parish, who had done extensive investigation. He simply failed either to do enough investigation on his own or to include enough of the information supplied to him by his brother officer in the warrant application. We find, as did the U.S. Supreme Court, that "[i]ndiscriminate application of the exclusionary rule,..., may well `generat[e] disrespect for the law and the administration of justice'" (Leon, supra, 104 S.Ct. at p. 3413), as, indeed, it appears to this court to have already done in past years.
Accordingly, under the facts and circumstances of this case, and the refreshing new views of the United States Supreme Court announced in Leon, we are of the opinion that the officers' reliance on the magistrate's determination of probable cause was objectively reasonable and application of the extreme sanction of exclusion is inappropriate. The State would be permitted to use the seized evidence in their case in chief.
Therefore, for the reasons assigned, we find that the ruling of the district court denying the motion to suppress was correct and we affirm the defendant's plea of guilty and the sentence of the trial court.
AFFIRMED.