526 So.2d 1275 (1988)
STATE of Louisiana, Plaintiff-Appellee,
v.
George Robert HODGES, Defendant-Appellant.
No. CR87-915.
Court of Appeal of Louisiana, Third Circuit.
April 12, 1988.
*1278 John M. Crochet, Public Defender Office, Lake Charles, for defendant-appellant.
Beth McCall, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before GUIDRY, DOUCET and KNOLL, JJ.
DOUCET, Judge.
On April 18, 1985, appellant, George R. Hodges, was indicted by a Calcasieu Parish Grand Jury for knowingly and intentionally possessing methamphetamine, a schedule II stimulant, with the intent to distribute the controlled dangerous substance, a violation of La. R.S. 40:967(A)(1). Also indicted at the same time were appellant's wife, father, and an acquaintance. After determination of various pre-trial motions including severance of the trial of appellant and his wife from the other two defendants, trial was held on January 28, 1986. The appellant was found guilty as charged by eleven jurors. He was sentenced on March 3, 1986, to eight years in the Department of Corrections and ordered to pay a $5,000 fine. On May 15, 1987, the appellant was granted an out-of-time appeal converted from appellant's application for post conviction relief. Appellant asserts twelve assignments of error. Assignments of Error Numbers Two, Three, Six and Ten were abandoned subject to the reservation that should appellate counsel receive additional information to show that an abandoned issue is viable, leave will be sought to file a supplemental brief.
FACTS:
On January 24, 1985, Kenneth Savant was stopped for a traffic violation and found to have a firearm in his car despite being a convicted felon. Narcotics officers called to the scene of the traffic stop noticed the smell of methamphetamine inside the Savant vehicle. Mr. Savant, while not being found to possess methamphetamine, offered to aid the police in arresting George Robert Hodges, the appellant, as he was the person the police would want in connection with methamphetamine. Mr. Savant, in return for consideration in his case, which was never pursued by the district attorney, told of a quantity of drugs at appellant's residence and that he had witnessed a lab for production of methamphetamine in appellant's residence within the last four hours before arrest. An affidavit was prepared in order to obtain a search warrant but the Sheriff's deputies conducting the investigation desired more because Mr. Savant had not shown his reliability in the past. Therefore, the officers provided money to Mr. Savant to set up a controlled buy. Before the buy was set up, an officer photostatically copied the money and the copies were attached to the affidavit prepared in support of the issuance of the search warrant. Mr. Savant was searched thoroughly twice before going to appellant's house and the car he would use was searched thoroughly with no contraband found in either search. Mr. Savant went to the appellant's home once and was informed that appellant would return shortly. Deputy Otis Long, surveilling the house during that night, saw a vehicle drop someone off at appellant's house and another vehicle circling the block stop and someone enter, then leave. Mr. Savant, with a body monitor attached, then entered the appellant's residence in his attempt to buy methamphetamine. He emerged later and was surveilled and followed continuously to a parking lot where he turned over a small quantity of what was apparently methamphetamine. At this time, after Savant informed the surveillance team that appellant had a police scanner, one of the surveillance officers radioed a short communication to the Sheriff's Office confirming *1279 that the buy had "gone down." After this, it was learned that Savant still had the buy money and that the methamphetamine was not actually purchased but apparently donated.
The search warrant obtained as a result of the informant's activity was then executed at approximately 12:30-1:00 a.m. The appellant and his wife were in the bedroom upstairs and appellant's father was in the bathroom doorway where the toilet was running and a bag containing methamphetamine residue was found in the commode. Appellant was given his Miranda[1] rights and indicated he understood them. Deputies found $1,840 in cash in the purse in the bedroom and, when asked, appellant said $1,000 had come from narcotics sales. Appellant also stated that he sold his methamphetamine for $800 an ounce, that he did not sell to kids, and that his methamphetamine was of higher quality than a competitor, Johnny Upchurch, because he cured it with distilled water. Marijuana was also found in the bedroom where appellant and his wife were apprehended. The methamphetamine recovered from appellant's house weighed a total of 520 grams. There was also a quantity of phenylactic acid, which is used to make phenylacetone, an immediate precursor to methamphetamine. A sample of toilet water also contained methamphetamine. Expert testimony revealed that an individual dose of methamphetamine is .1 gram to .2 grams, meaning a total of 2,500 to possibly 5,200 doses were found on the premises.

ASSIGNMENT OF ERROR NUMBER 1:
Appellant argues that the motion to suppress the physical evidence seized at appellant's house should have been sustained. Specifically, he claims that certain statements contained in the affidavit were known to be false or given with reckless disregard for the truth. Alternatively, he asserts that should the statements lacking total veracity be found to be merely negligent that the remaining portion be found to lack a proper showing of probable cause.
Appellant points to the statement in the affidavit that a "buy" had taken place, and that a "lab" had been seen within four hours by the confidential informant, Mr. Savant. It is undisputed that no purchase of narcotics by Mr. Savant took place although the affidavit contained statements that it had. The mistake in the instance of the purported narcotics purchase was not intentional nor given with reckless disregard for the truth. The police reasonably believed that time was of the essence to ensure that the contraband was still on the premises in light of the activity surrounding the residence. The police, through the confidential informant, learned of the presence of a police scanner making them fearful of more communication over police frequencies. Upon finding the confidential informant had gained possession of methamphetamine, Deputy Johnson radioed Deputy Fryar, one of the affiants, that the "deal had gone down." It was only later that it was learned that the "buy" money had not been used to obtain the narcotics. Although a short discussion between Johnson and Fryar occurred before Fryar went before the issuing judge, it was not communicated to Fryar that the transfer of drugs had been gratuitousnot a purchase.
Where intentional misrepresentations are made in the affidavit supporting the search warrant, or statements made with a reckless disregard for the truth, in order to synthesize probable cause, the warrant will be quashed. State v. Paster, 373 So.2d 170 (La.1979); State v. Ogden, 391 So.2d 434 (La.1980); Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978). The task is to find whether under the totality of the circumstances, the affiant acted in good faith in preparing the affidavit. State v. Racheau, 467 So.2d 544 (La.App. 3rd Cir.1984), writ denied 472 So. 2d 29 (La.1985). Because the affiants did not know that a purchase had not taken place and, having prepared the affidavit earlier in anticipation of a purchase and wanting to act promptly, the affiants fully and reasonably expected that, since they *1280 had provided buy money, a purchase would take place. The fact that a purchase did not take place does nothing to overturn the affiants' good faith effort to report the facts as they knew or reasonably perceived them to be.
Appellant also points to the statement in the affidavit by the confidential informant that a "lab" was on the premises and had been seen within four hours prior to his arrest. A functioning apparatus for the manufacture of methamphetamine was not found during the search. However, chemicals, precursors to the finished product, and other paraphernalia were found. The issue is not the veracity of the informant's statement but the veracity of the affiant and whether belief in the informant's statement was reasonable. State v. Mosley, 412 So.2d 527 (La.1982); State v. Paster, supra. The affiants truthfully restated what the informant represented to them and the informant just received what appeared to be methamphetamine which, along with the intelligence about the appellant, made the reliance reasonable. The fact that the confidential informant may have misidentified what he saw as a "lab", which denotes the capability of manufacture, or that a "lab" was seen by him and was subsequently removed, does not invalidate the search warrant due to the inclusion of the suspected presence of a manufacturing capability.
When unintentionally false statements are included in the affidavit supporting the issuance of a search warrant, the procedure for testing the affidavit is to correct the erroneous information under the mandate of State v. Rey, 351 So.2d 489 (La. 1977), as extended in State v. Lehnen, 403 So.2d 683 (La.1981). This procedure was succinctly restated in State v. Morris, 444 So.2d 1200 (La.1984) where the Supreme Court stated:
"Following the rule established in State v. Rey, supra, and expanded in State v. Lehnen, supra, we will rectify misstatements or omissions in the search warrant by correcting errors or supplying the missing information and then retest the affidavit for the presence of probable cause."
La.C.Cr.P. art. 162 states that a search warrant shall issue only on probable cause. Probable cause to obtain a search warrant exists where the facts and circumstances within an affiant's personal knowledge, and of which he has reasonably trustworthy information, are sufficient to form a reasonable belief that the offense has been committed and evidence may be found at the place to be searched. State v. Huffman, 419 So.2d 458 (La. 1982); State v. Lewis, 442 So.2d 1159 (La.App. 3rd Cir. 1983), writ denied 444 So.2d 1214 (La.1984); State v. Lachney, 436 So.2d 645 (La.App. 3rd Cir.1983), writ denied 440 So.2d 729 (La.1983).
The judicial officer must have enough information to support his individual judgment that probable cause exists. State v. Hughes, 433 So.2d 88 (La.1983); State v. Patterson, 422 So.2d 1131 (La.1982).
Excising the misstatements from the affidavit, it appears that probable cause would have been found without the minor embellishments, some of which are not attributable to the affiants. State v. Racheau, supra at 548. Affiants knew from intelligence reports that chemicals used in the production of methamphetamine had been recently delivered to the appellant. Intelligence had been received concerning appellant's alleged manufacturing of methamphetamine. The confidential informant had, on request of the deputies, gone to appellant's house and returned with a quantity of methamphetamine. In the case of State v. Chaffin, 324 So.2d 369 (La.1975), cert. den. 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832 (1976), a situation similar to the reconstituted affidavit was found to support probable cause.
In that case, the failure to state the reliability of the informant was attacked in a possession with intent to distribute marijuana conviction where a transfer of narcotics to the informant, and witnessed by the affiant, upheld probable cause without specifically being a purchase. In that case the court stated:

*1281 "The affidavit states that the affiant herself, after asking Duplechan to see if Chaffin could obtain a bag of marijuana for her, witnessed Chaffin drive up beside Duplechan's car, Duplechan get out of his car and get into Chaffin's, and shortly thereafter return to his car. Ten minutes later, at the affiant's trailer, Duplechan turned over a bag of marijuana to her. Duplechan's reliability is not necessary to establish probable cause since he was acting in response to affiant's request to obtain marijuana from Chaffin. What the affiant saw, while perhaps short of establishing guilt beyond a doubt, was consistent with guilt and established probable cause. State v. Paciera, supra [290 So.2d 681 (1974) ]; State v. Hightower, 272 So.2d 363 (La.1973)." Chaffin, supra, 324 So.2d at 372.
Even were the affidavit as recomposed found to lack a showing of probable cause, the evidence obtained in the search pursuant to the warrant would not require suppression. In State v. Ebey, 491 So.2d 498 (La.App. 3rd Cir.1986), this court applied the exception to the exclusionary rule enunciated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to good faith reliance on a search warrant. This court observed through Judge Guidry that:
"The Leon exception to the exclusionary rule was applied by our brethren of the First Circuit in State v. Shannon, 472 So.2d 286 (La.App. 1st Cir.1985); by our brethren of the Second Circuit in State v. Wood, 457 So.2d 206 (La.App. 2nd Cir.1984); and by our brethren of the Fifth Circuit in State v. DiMaggio, 461 So.2d 439 (La.App. 5th Cir.1984). In the cited cases, the courts concluded that the Leon exception to the exclusionary rule is applicable to cases arising under Article 1, Sec. 5 of the Louisiana Constitution of 1974. We agree with this conclusion.
According to Leon, suppression of evidence obtained pursuant to a warrant should be considered on a case by case basis and exclusion ordered only in those unusual cases where the purposes of the exclusionary rule will be furthered, i.e., the deterrence of illegal police conduct.
The court in Leon enumerated four instances in which suppression remains an appropriate remedy: (1) if the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and, (4) where the warrant is so facially deficient, i.e., fails to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. Leon, at 104 S.Ct. 3421, 3422."
As in Ebey, it can be said that the deputies acted reasonably and without recklessness in their preparation of the affidavit. This is obviously more than a bare bones affidavit in this case with an admirable effort to have fresh and sufficient facts to support the findings of probable cause. Exclusion would punish the law enforcement personnel who acted reasonably in light of the totality of the circumstances and needlessly hinder police action in the future.
We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER 4:
Through this assignment of error appellant contends that the motion to suppress statements given by appellant at the time of arrest was improperly denied. Appellant argues that although Deputies Bruce and McGarity and Sergeant Sigur of the State Police testified that appellant indicated he understood the Miranda rights read to him, the testimony of Deputy Fryar places the understanding by appellant of his rights in doubt. Deputy Fryar, in response to a line of questioning about his inability to recall if appellant understood his rights, stated, "All we're supposed to do is to advise him of his rights."
*1282 Appellant alleges that this unsolicited statement is indicative of a misunderstanding of the importance of finding the comprehension by the arrestee of his rights. Appellant further theorizes that because one deputy might be misguided about the need for determining the arrestee's understanding of his Miranda rights, that this belief must pervade the department and that therefore the other officers' testimony about appellant's indication that he understood the rights is somehow suspect.
In the face of three positive prosecution witnesses, this argument seems of dubious logic. Deputy McGarity and Sergeant Sigur testified specifically that appellant nodded to indicate he understood the rights which were read to him on several occasions. Sigur further testified that:
"A. ... Whenever I spoke with Mr. Hodges that night, we went back over there and I said, "Rob, you know you've been advised of your rights and you don't have to talk to us."
Q. You, yourself, told him that?
A. Yes, sir.
* * * * * *
Q. Sergeant Sigur, in response to your asking him after he hadyou and Deputy Fryar were speaking with him, that you know you've been advised of your rights, et cetera, whatever statement you made, what comment did he make?
A. He said, Yeah, I want to talk to you.
Q. He wanted to talk to you?
A. He wanted to talk to Deputy Fryar and myself."
Before a confession or inculpatory statement can be introduced into evidence, the state has the burden of proving beyond a reasonable doubt that it is free and voluntary and that the arrestee was apprised of his constitutional rights. La.R.S. 15:451; State v. Narcisse, 426 So.2d 118 (La.1983), cert. den. 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). The ruling of the trial judge on the admissibility of the statement will not be disturbed unless the totality of the evidence does not support his conclusions. State v. Burkhalter, 428 So.2d 449 (La.1983).
The evidence here clearly supported a finding that appellant indicated he understood his rights and knowingly and voluntarily waived those rights. There was testimony that at least some of appellant's statements were blurted out. Spontaneous and voluntary statements not given as a result of a police interrogation or compelling influences, such as Deputy Bruce indicates about appellant's statement, would be admissible even without Miranda rights. State v. Smith, 407 So.2d 652 (La.1981); State v. McPhate, 393 So.2d 718 (La.1981). A nod by itself can be enough to indicate an understanding of one's rights and a waiver of those rights considering the totality of the circumstances. Mullaney v. State, 5 Md.App. 248, 246 A.2d 291 (Ct.Sp.App.Md.1968). It is apparent that the trial judge had substantial cause to deny the motion to suppress.
We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER 5:
Appellant complains that the trial judge improperly limited his opening statement. The trial court denied appellant's attempt to refer to the arrest of the confidential informant on methamphetamine related charges approximately three weeks after the informant's visit to the Hodges' home on the day of the search that yielded methamphetamine.
The Louisiana Code of Criminal Procedure, while allowing for defense to make an opening statement under La.C.Cr. P. art. 765(4), does not lay down rules for the content of such statement. State v. James, 459 So.2d 1299 (La.App. 1st Cir. 1984), writ denied 463 So.2d 600 (La.1985); State v. Lee, 498 So.2d 1177 (La.App. 3rd Cir.1986), writ denied 504 So.2d 874 (La. 1987); State v. Bell, 263 La. 434, 268 So.2d 610 (La.1972) on rehearing. In its opening statement the defense is confined to an explanation of the nature of the defense and the evidence by which he expects to establish it. State v. James, supra; State *1283 v. Bell, supra. The trial judge is vested with wide discretion in his control of the opening statement and his ruling will not be disturbed absent a manifest abuse of discretion. State v. Lee, supra; State v. Denney, 352 So.2d 204 (La.1977).
Mr. Savant, the confidential informant, was not called as a witness. A witness's credibility can be impeached by convictions only and not arrests. La.R.S. 15:495. A witness who has not testified cannot be impeached. La.R.S. 15:484; State v. Sepulvado, 342 So.2d 630 (La. 1977); State v. Corbello, 263 La. 86, 267 So.2d 204 (La.1972).
Appellant argues that this is not an attempt to impeach this person not called by either side as a witness. Instead, he argues it is evidence tending to show that the informant planted the evidence later found during the search and used against appellant at trial. However, this argument that the evidence was admissible and, therefore, the objection was erroneously sustained also fails because the evidence lacks relevancy.
The fact that Savant was arrested after the pertinent time frame of the search while allegedly possessing a methamphetamine lab is not relevant to showing that he possessed the contraband at the time he visited the Hodges's house. Testimony was heard on the presence of jars with a strong methamphetamine smell being in Savant's possession on the day the search took place. It is obvious that the jury rejected the theory that appellant puts forward so any error overly restricting the opening statement by defense counsel would be harmless. State v. Lee, supra; State v. Green, 390 So.2d 1253 (La.1980).
This assignment of error appears to lack merit.

ASSIGNMENT OF ERROR NO. 7:
Appellant claims that a mistrial should have been ordered due to testimony concerning other crimes and for which no Prieur[2] notice was given. The testimony complained of concerned the presence of marijuana also found during the search in appellant's bedroom.
Under La.R.S. 15:447 and 15:448, what forms any part of the res gestae is always admissible in evidence. The scope of res gestae in relation to admission of other crimes evidence was discussed in State v. Haarala, 398 So.2d 1093 (La.1981). There, the Supreme Court stated:
"The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed. 1 Wigmore, Evidence § 218 (3d ed. 1940). In Louisiana, such acts are denominated as part of the res gestae and admitted under the authority of La.R.S. 15:447-48. A very close connexity between the charged offense and the other crimes evidence sought to be introduced under the res gestae exception is required. See State v. Schwartz, 354 So.2d 1332, 1334 (La.1978) and cases cited therein. This close connexity in time and location is essential to the exception because no notice of the state's intention to introduce evidence of offenses which are part of the res gestae is required. See La.C.Cr. P. art. 720; State v. Prieur, supra; Pugh, Louisiana Evidence Law 100-01 (Supp.1978) excerpting 35 La.L.Rev. 525, 526-27 (1975)." 398 So.2d at 1097.
Here, the connexity in time and place is obvious as the marijuana was found during the search which brought forth the present charge. The Second Circuit Court of Appeals has found this in two similar cases. In State v. Green, 437 So.2d 302 (La.App. 2nd Cir.1983), writ denied 443 So.2d 1121 (La.1984), the court there found drug paraphernalia and marijuana seized at the time of that defendant's arrest for possession of preludin to be part of the res gestae. In State v. Bailey, 452 So.2d 756 (La.App. 2nd Cir.1984), writ denied 456 So.2d 161 (La. 1984), the Second Circuit again found that on a possession of cocaine charge, evidence consisting of drug paraphernalia and references to other controlled dangerous substances found at the time of defendant's *1284 arrest was admissible under the res gestae exception.
In State v. Cann, 392 So.2d 381 (La. 1980), the Supreme Court hinted, in dicta, that res gestae would cover this situation. In Cann, evidence of a plea bargain resulting in a guilty plea to a charge of possession of marijuana was excluded in a possession of cocaine case. The marijuana and cocaine were both found during the same search. However, in a footnote, the court stated:
"Again, the marijuana itself or testimony as to its discovery might have been admissible as the part of the res gestae." 392 So.2d at 384.
This case presents a fact situation where the res gestae requirements are easily met. The reference to the marijuana was part of the continuous transaction involving the arrest of appellant. The marijuana reference was necessary for the State's explanation of appellant's waiver of his Miranda rights, he being given those rights again after the marijuana arrest and to be considered in the totality of the circumstances for a knowing, voluntary waiver of those rights.
Again, Prieur notice was unnecessary for other crimes falling within the res gestae exception. State v. Haarala, supra; State v. Belgard, 410 So.2d 720 (La.1982).
We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER 8:
Appellant asserts in this assignment of error that the trial judge erred in allowing several irrelevant, highly prejudicial items to be received into evidence. The items specifically complained of are a police scanner, pistol, aluminum foil, and bottled water.
The appellant claims that the scanner and pistol were overly prejudicial in that they cast appellant as a "bad man." While they may cast this light to a certain extent, the nature of these items is probative of the intent to distribute as they are consistent with the actions of one engaging in or intending to engage in the distribution of a controlled dangerous substance.
Aluminum foil and bottled water are probative of the preparation and packaging of methamphetamine. These items are easily dismissed as common household items. The prejudicial effect of these items does not outweigh their probative value.
Whether evidence is relevant is governed by La.R.S. 15:441. That article provides:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
The evidence complained of tends to show the intent and the offense in this case. The determination of relevancy is within the discretion of the trial judge and will not be disturbed on appeal unless a clear abuse of that discretion is present. State v. Kahey, 436 So.2d 475 (La.1983); State v. Chaney, 423 So.2d 1092 (La.1982). There was no abuse of discretion by the trial judge here.
We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER 9:
Appellant complains here that the trial court erred in accepting Michael Bodin as an expert in the field of fingerprint removal and allowing him to give opinions. Bodin was introduced to fingerprint removal at the basic training academy. He then received in-service training by department supervisors and occasionally from visiting experts. He also attended the Scientific Crime Institute at Louisiana State University in Baton Rouge and the Serchee Crime Lab Seminar in Lafayette where fingerprint removal techniques were lectured on. Bodin's practical experience involved the removal or attempted removal of fingerprints in at least 2,000 instances.
Appellant argues that Bodin has never been formally recognized as an expert in a court of law and that no certificates showing completion of courses or seminars in *1285 the field of fingerprint removal were produced. Bodin's testimony in the area was limited to the explanation of why no fingerprints from the contraband containers were produced because of the surfaces involved.
Witnesses testifying about opinions must establish to the satisfaction of the court that they are sufficiently knowledgeable on the subject they will testify about. La.R.S. 15:466; State v. Trosclair, 443 So.2d 1098 (La.1983), cert. den. 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984). The competence of an expert is a question of fact within the sound discretion of the trial judge and his rulings on the qualification of expert witnesses will not be overturned absent manifest error. State v. Davis, 445 So.2d 163 (La.App. 3rd Cir.1984); State v. Coleman, 406 So.2d 563 (La.1981). Expert testimony is admitted because the expert is uniquely skilled at drawing inference thereby helping the jury more than the facts by themselves without his conclusions. State v. Myles, 432 So.2d 1018 (La.App. 1st Cir.1983); State v. Short, 368 So.2d 1078 (La.1979), cert. den. 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). The jury retains the right to accept or reject the expert's conclusions and the jury was so instructed in this case. State v. Pruitt, 482 So.2d 820 (La.App. 4th Cir. 1986), writ denied 488 So.2d 1018 (La.1986); State v. Myles, supra; State v. Short, supra.
The trial judge required a thorough inspection of Mr. Bodin's credentials and was satisfied as to his expertise in the field of fingerprint removal. His opinion on this matter cannot be said to be erroneous.
We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBERS 11 AND 12:
Appellant contends by these assignments of error that the sentence imposed was excessive and that the trial judge did not adequately articulate the factual basis and reasons for the sentence.
A trial judge is required to state for the record both considerations he has taken into account and the factual basis for imposition of sentence. La.C.Cr.P. art. 894.1; State v. Duncan, 420 So.2d 1105 (La.1982); State v. Schaeffer, 414 So.2d 730 (La.1982); State v. Pollard, 438 So.2d 1208 (La.App. 3rd Cir.1983), writ denied 443 So.2d 1125 (La.1984); State v. Tully, 430 So.2d 124 (La.App. 2nd Cir.1983), writ denied 435 So. 2d 438 (La.1983).
While a sentencing judge is not required to recite the entire La.C.Cr.P. art. 894.1 checklist of aggravating and mitigating factors, the record must reflect that the sentencing court adequately considered the guidelines. State v. Quebedeaux, 424 So. 2d 1009 (La.1982), appeal after remand, 446 So.2d 1210 (La.1984); State v. Richardson, 438 So.2d 1315 (La.App. 3rd Cir.1983). The important elements which must be considered are the defendant's personal history, prior criminal record, seriousness of the particular offense, and likelihood of rehabilitation or recidivism. State v. Soco, 441 So.2d 719 (La.1983); State v. Ezernack, 408 So.2d 907 (La.1981).
The trial court considered that appellant had a previous conviction for possession of LSD with intent to distribute in 1976. The appellant had received a three year sentence and was paroled after a year. The appellant was reprimanded for violating his parole because he was apparently not showing up for work for two months. The judge discussed the recent arrests of appellant on charges still pending from June of 1983 for manufacture of a controlled dangerous substance, and March of 1984 charges for manufacture of methamphetamine dropped after a motion to suppress was upheld.
After arrest on the charges at bar but before trial, appellant was arrested for two counts of distribution of methamphetamine in April of 1985, for possession of methamphetamine with intent to distribute in February 1986, after the conviction here but before sentencing, and also on February 18, 1986, between conviction and sentencing for possession of methamphetamine and possession of a firearm by a felon. The trial court can consider arrests, not just convictions, in determining an appropriate *1286 sentence. State v. Marks, 472 So.2d 601 (La.App. 3rd Cir.1985); State v. Sheppard, 466 So.2d 493 (La.App. 1st Cir. 1985); State v. Brown, 464 So.2d 1030 (La. App. 1st Cir.1985).
The appellant brought forth his addiction problem with narcotics as an explanation for his actions and pleaded for leniency for his wife who was convicted at the same trial of possession of methamphetamine with intent to distribute. It can be implied from the questioning about appellant's history of involvement in the drug culture that the likelihood of rehabilitation or recidivism was also considered. The sentencing transcript reveals no personal factors other than appellant's drug addiction and the seriousness of the offense was not directly addressed.
Failure to comply with art. 894.1 does not automatically render a sentence invalid. State v. Davis, 448 So.2d 645 (La. 1984); State v. Wimberly, 414 So.2d 666 (La.1982).
In Wimberly, supra at 672, the court stated:
"In those cases in which we have vacated the sentence and remanded the case for resentencing in full, recorded compliance with Article 894.1, our action was not prompted simply by the sentencing judge's failure to give his reasons for the penalty imposed. Rather, it was because, based on the inadequate record presented to us, there appeared to be a susbstantial possibility that the defendant's complaints of an excessive sentence had merit. In each case, pursuant to our duty to uphold the constitution, which expressly prohibits the imposition by law of excessive punishment, we vacated the sentence and remanded the case for resentencing on an adequate record, including strict compliance with Article 894.1."
As long as the record clearly reflects an adequate basis for the sentence imposed, remand is unnecessary. State v. Lanclos, 419 So.2d 475 (La.1982).
The record reveals that defendant was married but that the marriage was akin to a criminal enterprise in which even appellant's father may have been involved, he being charged in the same bill of information with the same offense as appellant. Appellant was apparently conducting his criminal activity with children on the premises as they were crying during the search. There was no evidence found in the portion of the transcript received that discussed appellant's occupational history other than the problem with his parole on the LSD charge. The possession with intent to distribute a schedule II stimulant is obviously a serious crime for which addiction, while perhaps explaining possession, does not fully account for the anticipated distribution. Appellant brought forth no other mitigating factors than his addiction at trial or on appeal in his brief. There seems to be an adequate basis for the eight year sentence and $5,000 fine.
The Louisiana Constitution of 1974 Art. 1 § 20 prohibits the imposition of a cruel, unusual or excessive sentence. Even a sentence which is within statutorily authorized limits can be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979).
A sentence is excessive if it is grossly out of proportion to the severity of the offense and nothing more than a needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Winzer, 465 So.2d 817 (La.App. 2nd Cir. 1985); State v. Ratcliff, 416 So.2d 528 (La. 1982).
In State v. Trahan, 425 So.2d 1222 (La. 1983), four and seven year sentences for possession of marijuana with intent to distribute were found not excessive.
In State v. Waldrop, 427 So.2d 1237 (La. App. 2nd Cir.1983), concurrent sentences totaling five years for pleading guilty to three counts of distributing methamphetamine and one count of possession was not excessive.
In State v. Marks, supra, the court found a 17½ year sentence imposed on a defendant who had pleaded guilty to distribution of CDS, was not so grossly disproportionate to shock our sense of justice.
In State v. Upchurch, supra, a competitor of appellant was sentenced to two concurrent *1287 eight-year terms at hard labor for manufacture of methamphetamine and possession of methamphetamine with intent to distribute. That case involved a similar narcotics history with many arrests but not even a single conviction.
The sentence in this case does not shock our sense of justice and seems justified considering appellant's rapidly growing list of problems with the law.
We find no merit to this assignment of error.
For the reasons assigned, we affirm the conviction and sentence of the defendant.
AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] State v. Prieur, 277 So.2d 126 (La. 1973).