846 So.2d 980 (2003)
Richard SMITH
v.
KANSAS CITY SOUTHERN RAILWAY COMPANY, et al.
No. 02-1505.
Court of Appeal of Louisiana, Third Circuit.
May 28, 2003.
*982 Michael K. Cox, Cox, Cox, Filo & Camel, Lake Charles, LA, for Plaintiff/Appellant/Appellee, Richard Smith.
Richard E. Gerard, Jr., Scofield, Gerard, Veron, Singletary & Pohorelsky, Lake Charles, LA, for Defendants/Appellees/Appellants, Kansas City Southern Railway Company, David A. Watkins.
Andrew P. Texada, Stafford, Stewart & Potter, Alexandria, LA, for Intervenor/Appellant, Government Employees Insurance Company.
Court composed of SYLVIA R. COOKS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
Richard Smith's wife, Beth, died in a train/automobile accident. After a jury trial, Mr. Smith's claims against Kansas City Southern Railway Company (KCS), owner of the railroad and the locomotive engine involved in the accident, were dismissed. Mr. Smith, KCS, and Government Employees Insurance Company (GEICO), Mr. Smith's automobile insurance carrier, intervenor, appeal. For the following reasons, we affirm in part and reverse in part the judgment of the trial court.

Facts
On April 2, 1995, Beth Smith was killed when her car was hit by a KCS train as she attempted to cross a railroad track in Vernon Parish. Mr. Smith filed suit against KCS; David Watkins, the engineer of the KCS locomotive involved in the accident; the Vernon Parish Police Jury (VPPJ); and the Louisiana Department of Transportation and Development. GEICO intervened to recover monies it paid to Mr. Smith pursuant to the terms of his policy for the car Beth was driving at the time of her accident and her funeral expenses. Before trial, the VPPJ and the State were dismissed on motions for summary judgment.
Mr. Smith alleged that KCS was liable for Beth's death for numerous reasons, including obstructions within its right of way at the crossing which prevented her from seeing the train as it approached the crossing, failure to sound its whistle, failure to warn of the train's approach to the crossing, and failure to properly sign the crossing.
In November and December 2000, the case was tried before a jury over the course of four days. At the conclusion of the trial, the jury returned a verdict in favor of KCS, finding that neither it nor its employees were at fault in causing the accident. Mr. Smith assigns three errors: the trial court's refusal to allow the presentation of a computer animation of the accident to the jury; the trial court's refusal to allow his counsel to use demonstrative aids during his opening statement; and the jury's finding of no fault on the part of KCS and its employees. KCS assigns as error the trial court's assessment of expert witness fees. GEICO assigns as error the jury's finding of no liability on the part of KCS and its employees *983 and the assessment of all costs to it and Mr. Smith.

Exclusion of Computer Animation
Mr. Smith assigns as error the trial court's refusal to allow the jury to view a computer animation of what Beth allegedly saw as she approached the KCS railroad crossing. After a hearing on the qualifications of the person who created the computer animation, the computer program used to create the animation, and the factual information used to create the animation, the trial court refused to allow Mr. Smith to show it to the jury. The trial court expressed concern regarding the sufficiency of evidence produced regarding the computer program used to create the animation. More importantly, the trial court was of the opinion that the animation was created using inaccurate information. The trial court found information regarding two vans situated within the KCS right of way at the crossing to be "woefully inaccurate" because the state trooper who investigated the accident had testified in his deposition that he did not actually measure the vans but "eyeballed" them to determine their dimensions. On this point, defense counsel questioned the animator's attempts to obtain accurate information regarding the size and placement of the vans in the animation. With regard to placement of the vans, the state trooper had testified that he did not use the same reference point for all of his distance measurements, including the distance of the vans from the railroad track. He was more interested in the point of impact and the point of rest of Ms. Smith's car, so those were the only measurements for which he used the same reference points. He also testified that he considered the other measurements to be secondary and admitted that he did not try to be accurate with any of them.
The admissibility of motion pictures or videotapes is largely within the discretion of the trial judge. In determining the admissibility of such demonstrative evidence, the trial court must consider whether the videotape accurately depicted that which it purported to represent and whether it would aid the jury's understanding. Against those factors, the trial court must consider whether the videotape may mislead the jury or whether its probative value is outweighed by its prejudicial effect. Lafleur v. John Deere Company, 491 So.2d 624 (La.1986) and Burk v. Illinois Central Gulf Railroad Company, 529 So.2d 515 (La.App. 1st Cir.), writ denied, 532 So.2d 179 (La.1988).
U.S. Fid. & Guar. Co. v. Hi-Tower Concrete Pumping Serv., Inc., 574 So.2d 424, 438 (La.App. 2 Cir.), writs denied, 578 So.2d 136, 137 (La.1991).
The animation at issue is not simply a moving picture of what existed at the KCS crossing when the accident occurred. It was created by an animator who used a computer program and specific information provided to him regarding the train, Beth's car, and physical objects at or near the crossing to recreate what Beth allegedly saw as she approached the crossing. As discussed above, defense counsel brought out on cross-examination of the animator that some of the information he relied upon to create the animation was inaccurate.
Under these facts, we find no error with the trial court's refusal to allow the animation to be shown to the jury.

Use of Demonstrative Aids During Opening Statement
Counsel for Mr. Smith sought to refer to and display to the jury during his opening statement an exhibit which the parties had stipulated was going to be introduced into evidence. Counsel for *984 KCS objected, and the trial court refused to allow it.
The trial court is vested with wide discretion in his control of the opening statement. State v. Smith, 625 So.2d 620 (La.App. 3 Cir.1993). A situation similar to this one was presented in State v. Hodges, 526 So.2d 1275 (La.App. 3 Cir.), writ denied, 532 So.2d 174 (1988). In Hodges, the trial court allowed counsel to verbally refer to exhibits which were to be introduced into evidence during the trial but would not allow the exhibits to be shown or demonstrated to the jury during the opening statement.
We recognize that the parties stipulated the evidence at issue would be admissible at trial, so there was no concern regarding admissibility of the evidence. And, considering the stipulation, we are somewhat perplexed by defense counsel's objection to the reference and display of the evidence during opening statement. However, we cannot say that the trial court abused its much discretion by refusing the request.

Jury's Finding of No Fault by KCS
Mr. Smith appeals the jury's finding of no fault on the part of KCS or its employees. The manifest error standard is applicable to our review of this matter. Under this standard, when the inferences drawn by the trier of fact from the record are reasonable, those inferences will not be set aside on appeal. Stobart v. State, through DOTD, 617 So.2d 880 (La. 1993).
The jury heard the testimony of witnesses who saw the accident as it happened, witnesses near the accident site when it occurred, the KCS locomotive engineer, KCS employees responsible for maintaining the right of way at the crossing, and three expert witnesses on train safety and train regulations, who gave their opinions regarding KCS's liability. The witnesses who saw the accident testified that the train blew its whistle well before the crossing, and one of them also testified that she saw that the locomotive's lights were on. The locomotive engineer testified that he began sounding the whistle beginning one-quarter mile before the crossing. The black box recorder on the engine confirmed that the whistle was sounded one-quarter mile before the crossing and that the high-beam lights on the locomotive were on at the time of the accident. The locomotive engineer's testimony that he was traveling at the required speed limit, 45 m.p.h., was also confirmed by the black box recording. While there were two people in the area of the accident who testified that they did not hear a whistle, it was the jury's role to weigh this evidence and determine which was more probably correct.
The jury was also shown photographs of the crossing which showed the vans and other items which Mr. Smith contends blocked Beth's view of the crossing as she approached it. One of the photographs showed the crossing with the alleged obstructions and railroad cars on the track behind the vans. One witness to the accident testified that he saw no reason that a driver in Beth's position would not have seen the train as it approached the crossing.
The following testimony of the other witness to the accident and the locomotive engineer regarding Beth's actions immediately prior to the accident may have also contributed in large part to the jury's verdict. The witness testified:
She came up to the railroad tracks slowing down but was still moving, looked to her right and then to her left and then gunned it and that's when the train hit her.
The locomotive engineer testified:
Yes, sir, I did get close enough to see her and she did look-was looking to the right the whole time.

*985 . . . .
No sir, it appeared to me that she was going to stop.... I would say in my line of worktwenty some odd years of experience in this, I would say that there is not a doubt in my mind that the lady could have stopped as slow as she was going had she [ ] looked in our direction.
The parties' experts presented opposing opinions regarding KCS's liability.
Considering all of the evidence presented at trial, the jury could have reasonably concluded that the alleged obstructions did not block Beth's view of the train. Accordingly, we cannot set aside the verdict.

Assessment of Expert Witness Fees
KCS assigns as error the trial court's assessment of its expert witness fees, arguing the trial court's award of $5,000.00 for expert witness fees was unreasonable because its actual expert witness fees were $38,157.98. In Trans La. Gas Co. v. Heard, 629 So.2d 500, 505 (La. App. 3 Cir.1993), this court addressed the fixing of expert witness fees, holding:
The fixing of expert witness fees is largely within the sound discretion of the trial court, and, on appeal, we may not reverse the trial court's fixing thereof absent an abuse of discretion. In fixing expert witness fees, each case must turn on its own peculiar facts and circumstances. However, the jurisprudence has provided us with factors to consider such as the amount of time consumed by the experts in compiling their reports; the amount charged the landowner; the amount of time spent in preparing for trial; the amount of time actually spent in court; the expertise of the expert; the difficulty of the appraisal; the amount involved in the award; and the degree to which the expert's opinion aided the court in its decision.
In its reasons for ruling on KCS's motion to set expert witness fees, the trial court outlined these factors, highlighting consideration of the "helpfulness of expert's testimony." The trial court then noted:
It appears that the experts called to testify in this case were of little help to the Court in deciding the case inasmuch as it is clear that the jury was influenced by the testimony of lay witnesses to the effect that plaintiff's deceased wife and operator of the motor vehicle was looking in the opposite direction from the train at the time she attempted to cross the tracks.
We find no abuse of discretion by the trial court in its fixing of the expert witness fees.

Assessment of Court Costs
GEICO intervened seeking reimbursement of $19,475.00 it paid Mr. Smith for his vehicle and $3,000.00 it paid for funeral expenses pursuant to the medical payments coverage of its policy. The trial court's judgment assessed Mr. Smith and GEICO with "all" costs of court. GEICO contends that the trial court's assessment of all costs to two parties without apportioning them between the parties is "not equitable under the facts of this case" because it can be called upon to pay 100% of the costs, even though it did not participate to the same extent that Mr. Smith did in the litigation.
A trial court's assessment of court costs will not be disturbed on review in the absence of an abuse of discretion. Ford v. State, through Dep't of Pub. Safety, 00-1546 (La.App. 3 Cir. 6/5/02), 819 So.2d 1156. Under the circumstances of this case, we find that the trial court's assessment of all costs to Mr. Smith and GEICO without apportioning them between the parties is an abuse of discretion. Accordingly, we assess Mr. Smith and GEICO *986 each with one-half of all costs, including expert witness fees. In doing so, we are mindful of GEICO's arguments regarding the extent of its participation in the litigation and its potential recovery as compared to Mr. Smith's participation and potential recovery. However, we are also mindful that if Mr. Smith had recovered, GEICO would have benefitted from the costs expended by his counsel and that without Mr. Smith's lawsuit it had no chance of recovery.

Decree
For these reasons, the judgment of the trial court is affirmed in part and reversed in part. Court costs at the trial level, including expert witness fees, are assessed one-half to Richard Smith and one-half to Government Employees Insurance Company. Costs of this appeal are assessed one-third each to Richard Smith, Kansas City Southern Railway Company, and Government Employees Insurance Company.
AFFIRMED IN PART AND REVERSED IN PART.